**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ERTAN EREN; SUSAN EREN,
Petitioners-Appellants,

v.                                                                  No. 96-1620

COMMISSIONER OF INTERNAL REVENUE,
Respondent-Appellee.

Appeal from the United States Tax Court.
(Tax Ct. No. 94-866)

Argued: December 2, 1996

Decided: June 14, 1999

Before WIDENER and MURNAGHAN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Murnaghan and Senior Judge Phillips concurred.

_____

**COUNSEL**

**ARGUED:** James D. McCarthy, Jr., Potomac, Maryland, for Appel-
lants. Patricia McDonald Bowman, Tax Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON
BRIEF:** Loretta C. Argrett, Assistant Attorney General, Charles E.
Brookhart, Tax Division, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

Petitioners Ertan and Susan Eren appeal a U.S. Tax Court decision that Ertan Eren's 1989 income from the U.S. Department of State, Office of Foreign Buildings Operations (FBO) did not qualify for the foreign earned income exclusion of 26 U.S.C. § 911 (§ 911). The tax court found that Eren's relationship with his employer was that of an employee rather than an independent contractor, with the consequence that he was not entitled to the § 911 exclusion. After reviewing the record, we are of opinion that this ruling, that Eren was an employee, was not clearly erroneous. We further find that the Erens' remaining assignments of error are also without merit, and we affirm.

I.

Ertan Eren is an architect. He has worked exclusively for the Office of Foreign Buildings since 1983. On March 6, 1984, he entered into a personal service contract with that office to serve as a project manager for improvements and repairs at the U.S. Embassy in Ankara, Turkey. He worked there several years under modified versions of the contract. In July 1988, FBO sent him to oversee construction of an annex to the U.S. Embassy in Bogota, Colombia, under yet another modified contract. Eren remained in Bogota until mid-1990.

In the mid-1980's, the Internal Revenue Service (IRS) reviewed Foreign Buildings' employment tax practices. As a result, it determined that most of its over 350 personal service contractors had been improperly characterized and should be reclassified as employees. The Foreign Buildings Office issued two directives in 1987 requiring that the contractors be treated as employees. An FBO memorandum dated December 12, 1989 notified Eren that he should designate himself as an FBO employee, rather than an independent contractor, on his 1989 federal income tax return. FBO also issued Eren a W-2 form and withheld FICA tax of $3,604.80.

Eren instead filed as an independent contractor on his 1989 income tax return and paid self-employment tax of $6,250. He excluded

2

$70,000 of the payments he received under the FBO contract for the Bogota project on the basis of § 911's foreign earned income exclusion. Section 911 excludes from gross income a qualified individual's foreign earned income. 26 U.S.C. § 911(a)(1). Foreign earned income, however, does not include amounts paid by the United States or a United States agency to an employee thereof. 26 U.S.C. § 911(b)(1)(B)(ii). Accordingly, Eren would qualify for a§ 911 exclusion if he is classified as an independent contractor but not if classified as a State Department employee. The IRS audited the Erens and determined a $15,459 deficiency for 1989 after concluding that Eren was an FBO employee and therefore not entitled to a§ 911 exclusion.

The Erens appealed this determination to the U.S. Tax Court. The tax court ruled in favor of the IRS. The court looked at seven factors in determining the nature of the relationship between FBO and Eren: (1) the degree of control exercised by FBO over Eren's work; (2) Eren's lack of investment in his work facilities; (3) Eren's lack of opportunity for profit or loss; (4) FBO and Eren's mutual right to terminate the contract; (5) the fact that the Bogota project was within the scope of FBO's regular business of constructing U.S. government buildings overseas; (6) the relative permanency of Eren's relationship with FBO; and (7) FBO's intention, at least by December 1989, to create an employer-employee relationship. See Weber v. Commissioner, 60 F.3d 1104, 1110 (4th Cir. 1995) (listing relevant factors). The tax court characterized the first factor (the "right-to-control") as the "master test," but also found that all seven factors weighed in favor of classifying Eren as an employee rather than an independent contractor. The court accordingly upheld the determination of the IRS that the taxpayers were not entitled to a § 911 exclusion.

The Erens raise several issues on appeal. In addition to arguing that the tax court erroneously classified Eren as an employee, the Erens also challenge the court's refusal to admit certain items into evidence and to award them attorney's fees and costs. The taxpayers' only assignment of error meriting any extended discussion is their claim regarding the determination of Eren's employment status.

II.

This court affirms a factual finding of the tax court unless it is clearly erroneous. Hendricks v. Commissioner, 32 F.3d 94, 97 (4th

3

Cir. 1994). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Hendricks, 32 F.3d at 97; Thomas v. Commissioner, 792 F.2d 1256, 1260 (4th Cir. 1986) (citing Anderson v. Bessemer City, 470 U.S. 564 (1985)). The determination of an individual's employment status is a question of fact. Weber, 60 F.3d at 1110. See also Opus 3 Ltd. v. Heritage Park, Inc., 91 F.3d 625, 630 (4th Cir. 1996) (applying clearly erroneous standard to employment status determination); Garrett v. Phillips Mills, Inc., 721 F.2d 979, 982 (4th Cir. 1983) (finding no clear error in the district court's ultimate employment status conclusion predicated on its findings of fact). Because § 911 does not define the term "employee," courts look to "the usual common law rules" when distinguishing between employees and independent contractors under federal tax law. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23 (1992); Weber, 60 F.3d at 1110; Treas. Reg. § 31.3121(d)-1(c)(1).

We cannot say the tax court was clearly erroneous in applying the relevant common law rules in this case. Eren asserts that he was not under direct day-to-day control of FBO as an architect in the field. However, the threshold level of control necessary to find employee status is usually lower when applied to professional services than when applied to nonprofessional services. Weber , 60 F.3d at 1111. Here, Eren's contract provided that he "will inspect construction, improvements and/or repairs at project sites and will be directly responsible to FBO in the performance of his duties under this contract." The contract also required Eren to "[p]erform appropriate functions and obligations in accordance with procedures or other directives issued by the Contracting Officer or his designee." He was generally bound by the construction documents for the building and could not exceed the budget. Moreover, FBO required Eren to follow a Project Director's Handbook.

Eren contends that he had an unusual amount of discretionary authority over the project's details. Nevertheless, Leroy Wallin, the Bogota project's contracting officer at FBO in Washington, monitored Eren's expanded authority and could either enlarge or limit it. In addition, Wallin tracked Eren's activities through mandatory monthly progress reports. Eren was also required to maintain a daily log and to submit a telegraphic report monthly. While Eren could hire

4

and fire his own staff, the staff's contracts were with FBO and paid by FBO.

Furthermore, FBO dictated Eren's hours and leave. He was paid according to the federal government's Foreign Service Schedule. This fixed salary was contingent on a minimum 40-hour work week rather than the project's completion. Although he did not receive retirement benefits, Eren was entitled to annual leave, sick leave, and home leave. Five percent of his compensation was for his purchasing health insurance. Moreover, the Department of State at one point required all dependents, including Eren's wife, to leave Bogota due to political unrest. FBO paid for her return trip. Although this is arguably a close case, we cannot say from these facts that the tax court was clearly erroneous in finding that FBO had the right to control Eren's activities.

Beyond the control test, the other factors discussed by the tax court also weigh in favor of concluding that Eren was a State Department employee. We note in particular the apparent permanency of the employment relationship (as stated earlier, Eren has performed services exclusively for FBO since 1983) and the conceded fact that Eren was at no risk of suffering a loss as a result of his services for FBO pursuant to his contract, other than suffering loss of payment on the contract. Based on the record, we are of opinion that the tax court did not commit clear error in concluding that Eren was an employee rather than an independent contractor.

As an alternative basis for finding that Eren was an independent contractor, the taxpayers claim Eren qualifies for the safe harbor provision regarding employment status found in § 530 of the Revenue Act of 1978.[1] Section 530, however, was meant to protect employers who had consistently treated individuals as independent contractors from being liable for employment taxes if the IRS reclassified the individuals as employees. While inartfully worded, it applies in terms " . . . for the purpose of applying such [employment] taxes for such period with respect to the . . . [employer] . . . ." As stated in the legislative history, the bill "does not change in any way the status, liabilities, and rights of an individual whose employment status is at issue."

_____

[1] Not codified, found at 26 U.S.C.A. (1989), under § 3401, pp360-361.

5

H.R. Rep. No. 95-1748, at 7 (1978). See also Rev. Proc. 85-18, 1985-1 C.B. 518, 519 (stating that § 530 affects employers' liabilities, not workers', and does not convert workers from status of employee to status of self-employed).

III.

The Erens' remaining assignments of error are also without merit. The tax court was entitled to refuse to admit into evidence two documents proffered by the Erens. One exhibit included the activity record and work papers of the IRS examining officer from the administrative portion of this proceeding. These papers purportedly showed that the IRS failed to consider the specific facts and circumstances of the Erens' case in determining the deficiency. However, a trial before the tax court is de novo, and the general rule is that it is a decision based on the merits of the case and not on any record developed at the administrative level. Gatlin v. Commissioner, 754 F.2d 921, 923 (11th Cir. 1985); Raheja v. Commissioner, 725 F.2d 64, 66 (7th Cir. 1984). We see no reason not to apply that rule here. Thus, the tax court was within its discretion in determining that the proffered evidence was not relevant.

The second refused exhibit comprised pages from Eren's daily log. Although the Erens now claim this exclusion as error, at trial they abandoned their efforts to have the document admitted. We will therefore not entertain this assignment of error.

Finally, the Erens' claim for attorneys fees and costs under 26 U.S.C. § 7430 also fails. They assert that they prevailed on a significant issue by obtaining a refund of the self-employment tax Eren paid in 1989. At trial, however, the IRS took the alternative positions that the Erens were liable either for self-employment tax if Eren were found to be an independent contractor or for FICA tax if he were found to be an employee. Once the court ruled that Eren was an employee, the IRS necessarily lost on the self-employment tax issue. We are of opinion that the Erens are not prevailing parties under the statute, for they have not substantially prevailed with respect to the amount in controversy or with respect to the most significant issue presented, whether or not Eren was an employee. 26 U.S.C.

6

§ 7430(c)(4)(A)(i). Accordingly, the Tax Court properly denied the Erens' fees and costs claim.

The decision of the Tax Court is accordingly

AFFIRMED.[2]

_____

[2] **Accord**: Ahmed v. Commissioner, 147 F.3d (8th Cir. 1998).

7