T.C. Summary Opinion 2001-2

UNITED STATES TAX COURT

JACK S. MORRIS AND DOROTHY MORRIS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2886-00S.                    Filed January 4, 2001.

Jack S. Morris, pro se.

Gary M. Slavett, for respondent.

PANUTHOS, Chief Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

All references to petitioner are to Jack S. Morris.
Respondent determined deficiencies in petitioners' Federal income
taxes in the amounts of $3,563 and $4,744 for tax years 1996 and
1997, respectively.[1]  After concessions,[2] the issues for decision
are: (1) Whether petitioner is a statutory employee; (2) whether
petitioner is entitled to an adjustment for cost of goods sold;
(3) whether petitioner is entitled to deductions for home office
expenses under section 280A; and (4) whether petitioner is
entitled to various Schedule C deductions.

---

[1]  After trial, the parties stipulated that petitioner
Dorothy Morris (now Dorothy Kirkpatrick) is entitled to relief
from joint liabilities determined for the 1996 and 1997 tax years
pursuant to sec. 6015(b).

[2]  Respondent concedes that petitioner is entitled to
deductions for union dues of $384 and $390 in 1996 and 1997,
respectively.  Respondent concedes that petitioner paid $184 and
$210 for uniforms in 1996 and 1997, respectively. Sec. 67 imposes
a 2-percent floor of adjusted gross income on miscellaneous
itemized deductions.  After concessions and our holdings, the
miscellaneous itemized deductions do not exceed the 2-percent
floor for 1996 and 1997.

Respondent concedes that petitioner is entitled to
deductions for home mortgage interest of $13,908 and $13,750 for
1996 and 1997, respectively.  On their Federal income tax
returns, petitioners deducted home mortgage interest of $9,482
and $9,375 for 1996 and 1997, respectively.

Petitioners claimed a deduction of $1,200 in 1996 for legal
and professional services.  Petitioner did not address this
deduction at trial.  As a result, petitioner is deemed to have
conceded the item.  See Rules 142(a), 149(b); Sundstrand Corp. v.
Commissioner, 96 T.C. 226, 344 (1991); Pearson v. Commissioner,
T.C. Memo. 2000-160.

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing their petition, petitioners resided in Costa Mesa, California.

During the period at issue, petitioner worked for Interstate Brands Co. (IBC) as a bakery deliveryman. IBC is in the business of producing and delivering baked goods.

Petitioner delivered baked goods to IBC's customers, including Costco and the Claim Jumper restaurant. Petitioner drove a vehicle provided by IBC, and IBC paid for gas and maintenance of the vehicle. On a typical workday, petitioner arrived at IBC between 3 a.m. and 4 a.m. and loaded IBC's truck with baked goods. Petitioner delivered baked goods in a territory assigned by IBC. IBC also required petitioner to deliver baked goods to certain customers pursuant to IBC's schedule. For example, petitioner serviced 7-11 stores daily pursuant to IBC's rules. Petitioner completed his route between 12 p.m. and 2 p.m.

The working relationship between petitioner and IBC was formalized in an agreement between the Local International Brotherhood of Teamsters and IBC. Petitioner received a base salary and a commission on the net sales of baked goods he delivered. Petitioner did not pay for the product he delivered to IBC's customers. IBC determined petitioner's workdays, and he

needed permission from an IBC supervisor to take a day off. IBC paid petitioner for vacation and sick days. Petitioner was required by IBC to wear a uniform. Petitioner punched a timeclock at the beginning and end of each workday. On Forms W-2, Wage and Tax Statement, issued by IBC in 1996 and 1997, petitioner was not listed as a statutory employee.

During the period at issue, petitioners resided in a five-bedroom house with their children. The house also contained a living room, kitchen, and bathrooms. Petitioner designated one of the bedrooms as a home office. The room contained a desk, telephone, and files. In the home office, petitioner telephoned bread orders to IBC. Petitioner also designated his two-car garage as a home office. Petitioner parked his personal van in the garage. Petitioner maintained bread on racks in the garage for certain customers. Petitioner also stored tools, bicycles, and other personal items in the garage.

On his 1996 and 1997 Federal income tax returns, petitioner indicated that he was a "statutory employee" and, therefore, entitled to report income and expenses on Schedule C pursuant to Rev. Rul. 90-93, 1990-2 C.B. 33. The Schedules C included as gross receipts the amounts reflected on the respective Forms W-2 issued by IBC. Petitioner subtracted $5,914 and $5,544 in 1996 and 1997, respectively, for cost of goods sold for the stale or damaged bakery goods petitioner returned to IBC. The amounts for

cost of goods sold reflected the industry average for stale and damaged returns, and not the actual amount returned to IBC. Petitioners also claimed Schedule C deductions for home office expenses in the respective amounts of $7,919 and $9,433 for 1996 and 1997.  Petitioner claimed the following deductions related to his vehicles on Schedule C:

| Claimed Deduction | 1996 | 1997 |
|-------------------|------|------|
| Car & truck expenses | $2,480 | $2,559 |
| Taxes & licenses | --- | 2,152 |
| Interest (other) | 2,479 | 1,215 |
| Depreciation | 2,952 | 3,621 |
| Sec. 179 expenses | --- | 10,000 |

On his Federal income tax returns, petitioner attributed a business use for the vehicles of 71.12 percent for 1996 and 63.74 percent for 1997.

Respondent determined that petitioner was a common-law employee and, therefore, not permitted to report income and expenses on Schedule C.  Respondent also determined that petitioner is not entitled to any reduction for cost of goods sold because petitioner was not in the business of selling baked goods and, in any event, petitioner failed to substantiate any purchases.  Respondent also contends that since petitioner was an employee, petitioners do not qualify for the home office deductions, as the home office was not maintained for the convenience of the employer.  Respondent disallowed all of the Schedule C deductions because the expenses were not ordinary and

necessary business expenses, and petitioner failed to substantiate the expenses.

## 1.  Statutory Employee

Petitioner contends that he was a statutory employee under section 3121(d)(3)(A), as he was a commission-driver who delivered bakery products.  Section 3121(d) defines "employee" for employment tax purposes as follows:

> SEC. 3121(d).  Employee.--For purposes of this chapter, the term "employee" means--
>
>> (1) any officer of a corporation; or
>
>> (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; or
>
>> (3) any individual <u>(other than an individual who is an employee under paragraph (1) or (2))</u> who performs services for remuneration for any person--
>
>>> (A) as an agent-driver or commission-driver engaged in distributing meat products, vegetable products, bakery products, beverages (other than milk), or laundry or dry-cleaning services, for his principal; [Emphasis added.]

A taxpayer cannot be a "statutory employee" under section 3121(d)(3)(A) unless he is not a common-law employee under section 3121(d)(2).  We therefore must decide whether petitioner was a common-law employee or independent contractor, and

if he is an independent contractor, then he may qualify as a "statutory employee". Lickiss v. Commissioner, T.C. Memo. 1994-103.

Whether an employer-employee relationship[3] exists is a question of fact. See Air Terminal Cab, Inc. v. United States, 478 F.2d 575, 578 (8th Cir. 1973); Professional & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988). If an employer-employee relationship exists, its characterization by the parties as some other relationship is of no consequence. See sec. 31.3121(d)-1(a)(3), Employment Tax Regs.

---

[3] Sec. 31.3401(c)-1(b), Employment Tax Regs., defines an employer-employee relationship as follows:

(b) Generally the relationship of employer and employee exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is not an employee.

This Court looks to seven factors to determine the existence of a common-law employer/employee versus an independent contractor relationship: (1) The degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the opportunity of the individual for profit or loss; (4) whether the principal has the right to discharge the individual; (5) whether the work is an integral part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believe they are creating. See Weber v. Commissioner, 103 T.C. 378, 387 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995); Professional & Executive Leasing, Inc. v. Commissioner, 89 T.C. at 232; Simpson v. Commissioner, 64 T.C. 974, 984-985 (1975); see also United States v. Silk, 331 U.S. 704, 716 (1947). No single factor is dispositive, and we must look at all the facts and circumstances in each case. See Professional & Executive Leasing, Inc. v. Commissioner, supra at 232; Simpson v. Commissioner, supra at 985; Eren v. Commissioner, T.C. Memo. 1995-555, affd. 180 F.3d 594 (4th Cir. 1999).

Although we review all of the factors, the "right to control" is the crucial factor in determining the nature of a working relationship. Weber v. Commissioner, supra at 387; Matthews v. Commissioner, 92 T.C. 351, 361 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990). The degree of control is one of great

importance, though not exclusive. See <u>Atlantic Coast Life Ins. Co. v. United States</u>, 76 F. Supp. 627, 630 (E.D.S.C. 1948). We must examine both the right of control and the control actually exercised by the potential employer. See <u>Radio City Music Hall Corp. v. United States</u>, 135 F.2d 715, 717 (2d Cir. 1943); <u>deTorres v. Commissioner</u>, T.C. Memo. 1993-161. The amount of control necessary to find an employer-employee relationship varies with different occupations. See <u>United States v. W.M. Webb, Inc.</u>, 397 U.S. 179, 192-193 (1970); <u>Reece v. Commissioner</u>, T.C. Memo. 1992-335.

We discuss below the factors considered to decide whether petitioner was a common-law employee or an independent contractor.

A. <u>Degree of Control</u>

IBC controlled the extent of petitioner's territory. IBC required that petitioner deliver goods to certain customers on specific days of the week. IBC dictated the hours of work, compensation, and leave. IBC required petitioner to punch a time clock when he began and ended a workday at IBC's place of business. Petitioner needed IBC's permission to take leave.

B. <u>Investment in Facilities</u>

IBC paid for and supplied the goods petitioner delivered. IBC provided petitioner with his delivery vehicle, and IBC paid

for all maintenance and fuel.  Petitioner did not have an investment in either the goods delivered or the facilities.

### C.  Opportunity for Profit or Loss

Petitioner received a commission for the baked goods he delivered to IBC's customers.  Petitioner also received a base salary each week.  Although petitioner did not receive commissions on the goods returned to IBC by its customers, IBC ultimately was responsible for any losses for goods returned. Therefore, petitioner did not have an opportunity for loss.

### D.  Right To Discharge

The record is silent with respect to this factor.

### E.  Integral Part of Business

IBC's business was to produce, deliver, and provide baked goods to various customers, such as Costco and the Claim Jumper. IBC required drivers to deliver baked goods to IBC's customers. This type of work was clearly within the scope of IBC's regular business.

### F.  Permanency of Relationship

The record is silent with respect to this factor.

### G.  Relationship Parties Believe They Created

Petitioner believes that he was a statutory employee.  The statutory employee box on the Form W-2 from IBC was not checked. Further, IBC paid the applicable payroll taxes and did not issue a Form 1099.  These factors indicate that IBC treated petitioner

as a common-law employee, as opposed to an independent contractor or statutory employee.

On balance, considering the record and weighing all of the factors, we conclude that petitioner was a common-law employee and not an independent contractor. Since petitioner was not an independent contractor, he therefore was not a statutory employee. See sec. 3121(d)(3); Lickiss v. Commissioner, T.C. Memo. 1994-103. Petitioner is not entitled to report gross income and claim expenses on Schedule C. Accordingly, we hold for respondent.

## 2. Cost of Goods Sold

The cost of goods purchased for resale in a taxpayer's business is an offset to gross receipts in computing gross income. See Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987); Max Sobel Wholesale Liquors v. Commissioner, 69 T.C. 477 (1977), affd. 630 F.2d 670 (9th Cir. 1980); Thorpe v. Commissioner, T.C. Memo. 1998-123; sec. 1.61-3(a), Income Tax Regs. Although cost of goods sold is not a deduction and, therefore, is not subject to the limitations on deductions, any amount allowed as cost of goods sold must be substantiated. See sec. 6001; Ranciato v. Commissioner, T.C. Memo. 1993-536; sec. 1.6001-1(a), Income Tax Regs.

Petitioner subtracted $5,914 in 1996 and $5,544 in 1997 for cost of goods sold in IBC's business. For the same reasons as

fully set forth above, petitioner was not an independent contractor but rather a common-law employee. Thus, he is not entitled to an adjustment for cost of goods sold. Even if petitioner were entitled to Schedule C treatment for income and expenses, petitioner failed to produce any evidence of the cost of goods sold in 1996 or 1997. See Gibbs v. Commissioner, T.C. Memo. 1988-491. Further, petitioner did not purchase the goods from IBC that IBC sold to its customers, and the amount listed as cost of goods sold was merely an industry average of stale and damaged returns. Therefore, we hold for respondent.

3. Home Office Deduction

Section 280A(a) provides that an individual taxpayer is generally not entitled to a deduction for a dwelling unit used by the taxpayer as a residence during the taxable year. Section 280A(c)(1), however, permits a deduction of expenses allocable to a portion of the dwelling unit which is regularly and exclusively used as either the principal place of business for any trade or business of the taxpayer or as a place of business which is used by clients or customers in meeting or dealing with the taxpayer in the normal course of his trade or business.

An employee is entitled to the deduction only if the office is for the convenience of the employer. See sec. 280A(c)(1). This use has been found where the employee is required to maintain the office as a condition of employment or when the home

office was necessary for the functioning of the employer's business or to allow the employee to perform his duties properly. See Frankel v. Commissioner, 82 T.C. 318, 325-326 (1984); Green v. Commissioner, 78 T.C. 428, 430 (1982), revd. on other grounds 707 F.2d 404 (9th Cir. 1983); Mathes v. Commissioner, T.C. Memo. 1990-483. A deduction is not allowed when the employee maintains the home office purely for his convenience, comfort, or economy. See Sharon v. Commissioner, 66 T.C. 515, 523 (1976), affd. 591 F.2d 1273 (9th Cir. 1978).

The facts in this case clearly demonstrate that petitioner did not maintain a home office as his principal place of business or as a place of business for meeting with clients or customers in the normal course of business. Additionally, petitioner failed to establish that he was required to maintain an office for the convenience of his employer. IBC did not require petitioner to maintain a home office in order to perform his duties. Petitioner testified that he used the home office as a place to make telephone calls to IBC and load bread in his personal vehicle. Since petitioner failed to come within the exception of section 280A(c)(1), we sustain respondent's disallowance of the claimed deductions for home office space for both 1996 and 1997.

## 4. Schedule C Expenses/Deductions

Although petitioner is not entitled to report deductions on Schedule C, we look at the claimed amounts to consider whether they may otherwise be deductible as miscellaneous itemized deductions on Schedule A. Section 162(a) permits a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Petitioner's trade or business is that of an employee for IBC. Expenses that are personal in nature are generally not allowed as deductions. See sec. 262(a). Deductions are a matter of legislative grace, and taxpayers must comply with the specific requirements for any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

A taxpayer is required to maintain records sufficient to establish the amount of his income and deductions. See sec. 6001; sec. 1.6000-1(a), (e), Income Tax Regs. A taxpayer must substantiate his deductions by maintaining sufficient books and records to be entitled to a deduction under section 162(a).

When a taxpayer establishes that he has paid a deductible expense but is unable to substantiate the exact amount, we are permitted to estimate the deductible amount. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We can estimate the amount of the deductible expense only when the

taxpayer provides evidence sufficient to establish a rational basis upon which the estimate can be made. See Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Section 274(d) supersedes the general rule of Cohan v. Commissioner, supra, and we cannot estimate the taxpayer's expenses with respect to certain items. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Section 274(d) imposes strict substantiation requirements for listed property (pursuant to sec. 280F(d)(4)). See sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). In order to substantiate the amount of expenses for listed property, a taxpayer must satisfy additional factors, such as establishing the amount of business use for the property, the amount of total use for such property, the amount of each expenditure, and the investment or business purpose of each use. See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Expenses should be recorded at or near the time when the expense is incurred. See sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). The record must contain sufficient information as to each element of every business use, but the level of detail will vary with each factual variation. See sec. 1.274-5T(c)(2)(ii)(C)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46018 (Nov. 6, 1985). For example, if a

taxpayer uses a vehicle for both business and personal purposes, and he uses the vehicle for deliveries on a regular, established route, then he may satisfy the adequate record requirement by recording the total number of miles driven during the tax year, the length of the route, and the date of each trip.  The date of each trip should be recorded at or near the time of each trip.  In addition, the taxpayer could establish the date of each trip with a receipt, record of delivery, or other documentary evidence.  See sec. 1.274-5T(c)(2)(ii)(C)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46018 (Nov. 6, 1985).  If a taxpayer cannot meet the requirements of section 274(d), then he is not entitled to a deduction.

A. Automobile Expenses

Petitioner deducted the following amounts related to his 1995 Dodge van and 1997 Ford Mustang: $2,480 and $2,559 in 1996 and 1997, respectively, for car and truck expenses (mileage); interest of $2,479 and $1,215 in 1996 and 1997, respectively; and $2,152 for taxes and licenses in 1997.  Petitioner testified that he used the van exclusively for the delivery of baked goods to IBC's customers on his days off and after hours.  Petitioner did not testify as to the business use of the Mustang.  Petitioner stated that when he purchased the Mustang, he stopped using the van, as he did not need to deliver as much bread.  Petitioner

submitted mileage logs which list the monthly total of miles driven.

Petitioner failed to meet the stringent requirements of section 274(d). The mileage log does not contain the date of each trip, nor does the log describe the business place or purpose of each trip. Petitioner also did not establish the total use and business use of each vehicle. The log merely describes the monthly odometer readings. The log does not appear to be contemporaneously created, thus reducing its reliability. The mileage log also conflicts with petitioner's testimony and his mileage statements on his Federal income tax returns for the years at issue. On his Federal income tax returns, petitioner attributed a business use for the vehicles of 71.12 percent for 1996 and 63.74 percent for 1997. We do not find petitioner's unsupported self-serving testimony to be credible. See Niedringhaus v. Commissioner, 99 T.C. 202, 219-220 (1992); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Therefore, petitioner is not entitled to deductions for the car and truck expenses.

B. Section 179

Petitioner deducted $10,000 in 1997 under section 179 for the purchase of his Ford Mustang. Section 179(a) provides that a taxpayer may elect to currently deduct the cost of tangible personal property purchased during the taxable year for use in

the active conduct of a trade or business. In 1997, the aggregate deduction limit of elected property under section 179(a) was $18,000. If a property has both business and other uses, then the taxpayer must establish that more than half of the property's use in the taxable year is for trade or business purposes. See secs. 274(d), 280F(d)(4); sec. 1.179-1(d)(1), Income Tax Regs.

Petitioner failed to establish that the Mustang was predominantly used in his trade or business as an employee of IBC. Petitioner did not establish either the total use or the business use of the vehicle. The incomplete mileage log, petitioner's testimony, and the inconsistent statements from petitioner's 1997 Federal income tax return prevent us from determining the amount of business use, if any, of the Mustang. Therefore, we sustain respondent's determination as to this issue.

### C. Depreciation

Petitioner deducted $2,952 and $3,621 in 1996 and 1997, respectively, for depreciation of the Dodge van and Ford Mustang. Section 167(a) permits a depreciation deduction for the exhaustion and wear and tear of property used in the trade or business. Section 274(d) imposes a strict substantiation requirement for deductions with respect to any listed property.

As we held above, petitioner failed to meet the requirements of section 274(d).  According, we hold for respondent on this issue.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.[4]

---

[4]  The decision to be entered herein shall reflect that petitioner Dorothy Morris is entitled to relief from joint liabilities determined for 1996 and 1997 pursuant to sec. 6015(b).