T.C. Summary Opinion 2001-106


UNITED STATES TAX COURT


HAROLD E. NICHOLAS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 423-98S.                    Filed July 23, 2001.


Lisa A. Alexander, for petitioner.

Bradford A. Johnson, for respondent.


POWELL, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

_____

[1]  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue.

Respondent determined deficiencies in petitioner's Federal income taxes and penalties as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1992 | $2,242 | $448 |
| 1993 | 3,110 | 622 |
| 1994 | 705 | 141 |

The issues are whether petitioner qualifies as a statutory employee under section 3121(d)(3)(C) and whether petitioner is liable for the negligence penalties under section 6662(a) for the years in issue.  At the time the petition was filed, petitioner resided in Petersburg, New York.

## Background

The applicable facts may be summarized as follows.  During the years at issue petitioner's occupation consisted of repairing and maintaining x-ray imaging equipment for medical establishments.  Petitioner's income during these years was received from two entities:  Troy Management Associates, Inc. (Troy), and Empire Imaging Technologies, Ltd. (Empire).  At issue is the work arrangement between petitioner and Empire.

Empire was formed in 1992 as a joint venture between a group of radiologists and several individuals, including petitioner, who serviced medical imaging equipment.  Empire provided maintenance and sales services to various medical establishments and dealt with several types of medical imaging equipment, including x-ray imaging equipment, magnetic resonance imaging

(MRI) equipment, and computerized axial tomography (CAT scan) equipment.

Petitioner had a 12-percent stock interest in Empire and was on Empire's board of directors. Additionally, petitioner held the position of "technical director." His duties as technical director were to be defined by the board; the record, however, is barren as to the specific nature of the technical director's duties. In addition to his managerial and directorial positions with Empire, petitioner was the sole individual hired by Empire to perform maintenance work on x-ray machines for Empire's customers.

The nature of petitioner's work as Empire's x-ray specialist involved traveling to the customer's location, troubleshooting the customer's x-ray equipment, and performing any necessary maintenance. If a malfunctioning part required repairs greater than those which petitioner could perform on the customer's premises, petitioner took the damaged part to his home-based workshop where he would perform the repairs. If a part needed to be replaced, petitioner would obtain the replacement and return on a subsequent visit for installation. Petitioner owned all of the tools and equipment he used to fulfill his maintenance duties, including the vehicle used to make service calls.

Petitioner also performed tasks related to his activities with Empire from his home. These tasks generally included making

phone calls to dealerships and manufacturers for replacement parts and new equipment, calling prospective customers with respect to sales, and contacting customers regarding their maintenance needs. This work was done from petitioner's home because Empire did not have adequate office space from which petitioner could work. Petitioner had no set hours, no supervision, and underwent no training during his time with Empire.

The record contains an employment agreement (agreement) between petitioner and Empire that was never formally executed. The agreement, however, generally set forth the intentions of petitioner and Empire as to the nature of petitioner's work. Under the agreement petitioner was to receive a salary of $32,500 per annum, was to be reimbursed for all incidental business expenses, and was subject to dismissal without cause upon a 90-day written notice. There was also a trade secrets clause and a covenant not to compete. The covenant would prevent petitioner from owning, operating, or otherwise working for a competitor of Empire while providing services to Empire and for a period of 1 year after his separation from service with Empire. This covenant was limited to a six-county region of New York, presumably the regions in which Empire operated. The covenant did not include the region petitioner maintained while providing services to Troy.

Petitioner and the other shareholders of Empire executed a shareholder agreement. The shareholder agreement provides that petitioner assign all preexisting contracts to Empire, agree to terminate his sole proprietorship, and transfer all preexisting accounts receivable to Empire in exchange for a 12-percent interest in Empire and a payment of $25,000. Again, petitioner's services to Troy were excluded from the shareholder agreement. Furthermore, the shareholder agreement provided that all management services would be provided by an entity called PhyServ, Ltd., an entity wholly owned by the radiologists with whom petitioner joined to form Empire. The management services were to include "consultative" services, management of accounts receivable and accounts payable, payroll services, marketing, and general administrative services. It is unclear what services were in fact actually provided by PhyServ, Ltd.

The Form W-2, Wage and Tax Statement, originally issued by Empire to petitioner for the years in issue did not have the box checked to indicate that petitioner was a "statutory employee". After the audit had commenced, petitioner requested that Empire issue amended Forms W-2 for the years in issue indicating a statutory employee status.

During the years in issue, Troy required identical maintenance services from petitioner. The sole difference was that Troy's only customer was St. Mary's Hospital, located in

Troy, New York. Troy treated petitioner as a common law employee on the Forms W-2 it issued to petitioner. Petitioner does not contest that classification.

While, under the nonexecuted employment agreement, petitioner was to be reimbursed for his expenses, it is undisputed that petitioner incurred expenses for which he was not reimbursed. On his income tax returns, petitioner claimed deductions for the expenses associated with his activities with Empire on Schedule C, Profit or Loss From Business. The returns were prepared by petitioner's accountant who had full knowledge of all of the facts. Respondent determined that these expenses should be properly reported on Schedule A, Itemized Deductions, as unreimbursed employee business expenses.

## Discussion

There is no dispute that petitioner incurred the expenses for the deductions he claimed. Rather, the dispute focuses on whether petitioner should be considered a common law employee or a statutory employee. If petitioner is characterized as a common law employee, the deductions for his expenses are not deductible in determining adjusted gross income, see sec. 62(a)(1), are classified as "miscellaneous itemized deductions", sec. 67(b), and are limited "to the extent that * * * [they exceed] 2 percent of adjusted gross income", sec. 67(a). In addition, miscellaneous itemized deductions are not deductible for

computation of the alternative minimum tax. See sec. 56(b).

"Statutory employees" are individuals in specified occupation groups who are not common law employees. See sec. 7701(a)(20). Instead, they are treated like common law employees solely for purposes of applying the Federal Insurance Contributions Act (FICA) under section 3121(d)(3). As independent contractors under common law principles, statutory employees are not treated as employees under sections 62 or 67. Also, statutory employees are not subject to the self-employment tax on their earnings as statutory employees.

Section 3121(d) provides, in pertinent part, as follows:

> SEC. 3121(d). Employee.--For purposes of this chapter, the term "employee" means--
>
> (1) any officer of a corporation; or
>
> (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; or
>
> (3) any individual (other than an individual who is an employee under paragraph (1) or (2)) who performs services for remuneration for any person--
>
> *     *     *     *     *     *     *
>
> (C) as a home worker performing work, according to specifications furnished by the person for whom the services are performed, on materials or goods furnished by such person which are required to be returned to such person or a person designated by him; * * *
>
> *     *     *     *     *     *     *
>
> if the contract of service contemplates that substantially all of such services are to be performed

personally by such individual; except that an individual shall not be included in the term "employee" under the provisions of this paragraph if such individual has a substantial investment in facilities used in connection with the performance of such services (other than in facilities for transportation), or if the services are in the nature of a single transaction not part of a continuing relationship with the person for whom the services are performed; * * *

A taxpayer cannot be a "statutory employee" under section 3121(d)(3)(C) if he or she is a common law employee under section 3121(d)(2) or an officer of a corporation under section 3121(d)(1). Therefore, the initial question is whether petitioner was a common law employee or independent contractor, and then, if he is an independent contractor, whether he qualifies as a home worker.

Whether an employer-employee relationship[2] exists is a question of fact. See <u>Air Terminal Cab, Inc. v. United States</u>, 478 F.2d 575, 578 (8th Cir. 1973); <u>Profl. & Executive Leasing, Inc., v. Commissioner</u>, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988). If an employer-employee relationship exists, its characterization by the parties as some other relationship is of no consequence. See sec. 31.3121(d)-1(a)(3), Employment Tax Regs.

This Court looks to seven factors to determine the existence of an employer-employee relationship versus an independent

---

[2] Sec. 31.3401(c)-1(b), Employment Tax Regs., defines an employer-employee relationship as follows:

> (b) Generally the relationship of employer and employee exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is not an employee.

contractor relationship.  Those factors are:  (1) The degree of
control exercised by the principal over the details of the work;
(2) which party invests in the facilities used in the work; (3)
the opportunity of the individual for profit or loss; (4) whether
the principal has the right to discharge the individual; (5)
whether the work is an integral part of the principal's regular
business; (6) the permanency of the relationship; and (7) the
relationship the parties believe they are creating.  Weber v.
Commissioner, 103 T.C. 378, 387 (1994), affd. per curiam 60 F.3d
1104 (4th Cir. 1995); Profl. & Executive Leasing, Inc. v.
Commissioner, supra at 232; Simpson v. Commissioner, 64 T.C. 974,
984-985 (1975); see also United States v. Silk, 331 U.S. 704, 716
(1947).  No single factor is dispositive, and we must look at all
the facts and circumstances in each case.  See Profl. & Executive
Leasing, Inc. v. Commissioner, supra at 232; Simpson v.
Commissioner, supra at 985; Eren v. Commissioner, T.C. Memo.
1995-555, affd. 180 F.3d 594 (4th Cir. 1999).

Applying these criteria to the facts here, we believe that
petitioner was an employee of Empire.[3]  It is clear that the
employment agreement between petitioner and Empire, while perhaps
unsigned, by petitioner's testimony, represented the intent of
the parties.  Under that agreement, the parties intended that

---

[3]  Due to our ultimate holding in this case it is unnecessary for
us to consider what portion, if any, of petitioner's income from
Empire was received due to his position as an officer.

petitioner would be an employee. We recognize that Empire's supervision of the specifics of petitioner's daily work was minimal. This, however, results from the professional nature of petitioner's work. As we noted in James v. Commissioner, 25 T.C. 1296, 1301 (1956):

> The methods by which professional men work are prescribed by the techniques and standards of their professions. No layman should dictate to a lawyer how to try a case or to a doctor how to diagnose a disease. Therefore, the control of an employer over the manner in which professional employees shall conduct the duties of their positions must necessarily be more tenuous and general than the control over nonprofessional employees. Yet, despite this absence of direct control over the manner in which professional men shall conduct their professional activities, it cannot be doubted that many professional men are employees. * * *

We also recognize that petitioner's daily work life under his association with Empire may not have differed significantly from that when he was working as a sole proprietor. On a daily basis, this may have been true. But, it ignores the fact that petitioner's relationship with former customers was fundamentally altered, albeit perhaps formally. Moreover, by joining Empire, petitioner chose the benefits of working for a corporation, and he cannot, when that form seems disadvantageous, disavow the corporate structure. See Moline Props. v. Commissioner, 319 U.S. 436 (1943).

On balance, considering the record and weighing all of the factors, we conclude that petitioner was a common law employee and not an independent contractor. Since petitioner was not an

independent contractor, he therefore could not be a statutory employee. See sec. 3121(d)(3); <u>Lickiss v. Commissioner</u>, T.C. Memo. 1994-103.

Respondent also determined penalties for negligence under section 6662(a) for the years in issue. Section 6662(a) provides that, if the section applies, there is imposed a penalty in an amount equal to 20 percent of the portion of the underpayment. The penalty applies, inter alia, to an underpayment due to negligence or disregard of the rules or regulations. See sec. 6662(b)(1). The term "disregard" includes "any careless, reckless, or intentional disregard." Sec. 6662(c). Negligence includes "any failure to make a reasonable attempt to comply". <u>Id.</u>

We do not understand respondent's argument that petitioner's conduct falls within the "disregard" ambit of section 6662(b)(1). We focus, therefore, on whether petitioner's actions constituted negligence.

A good faith reliance on advice from a qualified accountant can be a defense to the accuracy-related penalty for negligence in certain circumstances. See <u>Schwalbach v. Commissioner</u>, 111 T.C. 215, 230 (1998). Petitioner must establish that the adviser was qualified, that he supplied all relevant information, and that he relied on the advice in good faith. <u>Id.</u> These requirements are satisfied here.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered for respondent with respect to the deficiencies and for petitioner with respect to the penalties under section 6662(a)</u>.