T.C. Memo. 2005-86


UNITED STATES TAX COURT



LISA BETH LEVINE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9715-03.                 Filed April 14, 2005.


Lisa Beth Levine, pro se.

<u>W. Randolph Shump</u> and <u>Pamela J. Arthur Gerlach</u>, for
respondent.



MEMORANDUM OPINION


JACOBS, <u>Judge</u>:  Respondent determined a $2,571 deficiency in
petitioner's 1999 Federal income tax.  The ultimate issue to be
decided is whether petitioner is entitled to a deduction for her
contribution to her simplified employee pension for 1999.
Resolution of the ultimate issue depends upon whether

petitioner's employment relationship with the U.S. Department of
State (the State Department) from January 1 until November 19,
1999, under two personal service contracts covering that period,
was that of a common law employee of the State Department, as
respondent asserts, or an independent contractor, as petitioner
asserts.  We hold that petitioner's relationship with the State
Department was that of an independent contractor.[1]

---

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code Rule, and Rule references are to the Tax
Court Rules of Practice and Procedure.

In her opening brief, petitioner asserted that the burden of
proof should be shifted to respondent because the notice of
deficiency failed to adequately describe the basis for the tax
deficiency as required by sec. 7522(a).  In response to an
inquiry of the Court, respondent concedes that sec. 7491(a)
applies in the present case because the examination of
petitioner's 1999 return began after July 22, 1998, the effective
date of the statute.  Respondent also concedes that petitioner
has complied with the substantiation and cooperation requirements
of sec. 7491(a)(2).

The burden of proof consists of two burdens--the burden of
production (the duty of bringing forward evidence) and the burden
of persuasion (the risk of nonpersuasion).  Gerling Intl. Ins.
Co. v. Commissioner, 86 T.C. 468, 476 n.5 (1986).  The initial
burden of production requires the taxpayer to introduce evidence
sufficient to establish his/her claim by a preponderance of the
evidence.  Helvering v. Taylor, 293 U.S. 507, 514-515 (1935); see
also Pittman v. Commissioner, 100 F.3d 1308, 1317 (7th Cir.
1996), affg. T.C. Memo. 1995-243; Page v. Commissioner, 58 F.3d
1342, 1347-1348 (8th Cir. 1995), affg. T.C. Memo. 1993- 398.
Without regard to any burden-shifting provisions, if the taxpayer
successfully carries the initial burden of production as to a
particular adjustment, the burden of production (but not the
ultimate burden of persuasion) shifts to the Commissioner; i.e.,
the burden of introducing evidence showing an adjustment is
warranted shifts to the Commissioner.  Helvering v. Taylor, supra
at 514-515; Berkery v. Commissioner, 91 T.C. 179, 186 (1988),
(continued...)

## Background

This case was submitted to the Court fully stipulated pursuant to Rule 122.  Petitioner resided in Berwyn Heights, Maryland, when she filed her petition in this case.

A.    Service Provided to the State Department Pursuant to Personal Service Contracts

On June 30, 1998, petitioner entered into a personal service contract with the State Department to provide full-time services to the Office of Foreign Buildings Operations (FBO), Office of Operations and Post Support, Safety Division, as an industrial hygienist from July 5, 1998, to July 3, 1999.  On July 2, 1999, petitioner entered into a second personal service contract with the State Department to provide full-time services as an industrial hygienist from July 4, 1999, to July 1, 2000.

---

[1](...continued)
affd. without published opinion 872 F.2d 411 (3d Cir. 1989); Cozzi v. Commissioner, 88 T.C. 435, 443-444, (1987); Jackson v. Commissioner, 73 T.C. 394, 401 (1979); Westby v. Commissioner, T.C. Memo. 2004-179.

In any case in which both parties have satisfied their burdens of production by offering some evidence, then the party whose position is supported by the weight of the evidence will prevail regardless of which party bore the burden of persuasion. Blodgett v. Commissioner, 394 F.3d 1030, 1039 (8th Cir. 2005), affg. T.C. Memo. 2003-212.  Consequently, a shift in the burden of persuasion "has real significance only in the rare event of an evidentiary tie".  Id.

In a fully stipulated case such as this, there are no facts in dispute.  Hence we decide this case on the weight of the evidence without regard to any burden-shifting rule.  See Williams v. Commissioner, 123 T.C. 144 (2004).

The personal service contracts stated that (1) the contracts were authorized pursuant to 22 U.S.C. secs. 291-301 and (2) personnel hired under personal service contracts were not appointed, Federal employees (direct hire employees) as defined in 5 U.S.C. sec. 2105.  Standard Form 279, Federal Procurement Data System (FPDS) Individual Action Report, states that the contractor is a small, woman-owned business.

The State Department and/or petitioner had the right to terminate the personal service contracts without cause at any time with 30 days' notice.  The State Department could also terminate the personal service contracts for cause by written notice from the contracting officer to petitioner.

1.  Statement of Work

As an industrial hygienist, petitioner was responsible for (1) managing, coordinating, and implementing the State Department's worldwide industrial hygienist field technical services program; (2) directing or conducting evaluations and studies of work environments for health hazards; and (3) providing specific guidance and assistance to ensure protection of employees.  Petitioner performed her services according to the statement of work attached to the personal service contracts. The statement of work described petitioner's major duties to be as follows:

> 1.  Under the general direction of the senior
>     industrial hygienist, implements the Occupational

Health Program to provide a responsive health program. Conducts industrial hygiene and environmental health inspections worldwide. Writes comprehensive reports for the Safety Director, or the Senior Industrial Hygienist, with little administrative direction.

2. Inspects and monitors facilities, processes, or activities which may adversely impact employee health or the environment. Recommends or implements measures to eliminate or alleviate hazards. Writes comprehensive and insightful reports based on a professional evaluation of data collected during the survey.

3. Evaluates proposals involving toxic chemicals or physical agents which may adversely effect employee health, public health, or the environment. Recommends or implements measures to prevent anticipated hazards during construction/renovation projects.

4. Specifies equipment to protect employees, the public, or the environment from toxic chemicals or physical agents. Specifies analytical information to monitor toxic chemicals or physical agents such as radiation, noise and heat stress.

5. Trains employees in the use, handling and disposal of toxic chemicals and physical agents.

6. Investigates employee suggestions regarding industrial hygiene or environmental health hazzards. Recommends methods to eliminate or alleviate indoor air quality concerns.

7. Plans and develops a system for monitoring, coordination and collating industrial hygiene data generated by the industrial hygiene contractor and/or in-house resources. Develops an industrial hygiene management information system.

The statement of work described the "Supervisory Controls"

as follows:

Incumbent [petitioner] works under broad administrative guidance of the Senior Industrial Hygienist, who makes work assignments in terms of projects to be accomplished and provides statements of

policy and overall scope to guide the incumbent. Completed work is considered technically authoritative and is normally accepted without significant change.

Petitioner was responsible for the quality and technical accuracy of all services and work product delivered under the personal service contracts. The Government had the right to inspect and test all services, and if any of the services performed did not conform with the contract requirement, the Government could require petitioner alternatively to (1) perform the services again in conformity with those requirements or (2) take necessary action to ensure the conformance of future performance.

2.   Contracting Officer and Contracting Officer's Representative

The personal service contracts were executed by a contracting officer on behalf of the Government. Under the personal service contracts, the contracting officer could designate a contracting officer's representative (COR) to take action for the Contacting Officer under the contracts. The designation had to specify the scope and limitations of the authority delegated. Under the personal service contracts, petitioner was directly responsible to the COR. The COR was to provide assignments to petitioner, provide policy guidance, establish general priorities, and outline policy goals and objectives. Petitioner was responsible for planning and carrying out the projects.

The personal service contracts named Stephen Urman as the COR.  Under Delegations of Authority and Responsibility of Contracting Officer's Representative, the contracting officer authorized Mr. Urman to:  (1) Coordinate with petitioner on all technical matters, (2) give technical clarification as to the meaning of the specifications including inspecting, testing, and acceptance procedures, (3) inspect petitioner's progress to assure compliance with the contract terms and conditions, and (4) perform all functions necessary to accept the products or services for the Government.  The delegation precluded Mr. Urman from altering or modifying the personal service contracts.  Upon completion of petitioner's work, Mr. Urman was to inspect petitioner's work and inform the contracting officer, in writing, of any deviations from contract requirements.  If there were no deficiencies, a statement of satisfactory (or better) performance would be appropriate.  Mr. Urman was to prepare a written evaluation of petitioner's performance at the end of the contract.

Under the personal service contracts, petitioner was required to provide the services personally and was not permitted to reassign or delegate her duties to others.  Petitioner did not have any employees.

Petitioner worked with Federal employees and other workers. Petitioner did not supervise direct hire Government personnel,

but she could make recommendations to the COR and coordinate projects with direct hire personnel.

    3.    <u>Office Space, Compensation, and Benefits</u>

Petitioner's services under the personal service contracts required a valid security clearance. Petitioner was required to maintain strict secrecy concerning any information or documentation she obtained in conjunction with work performed under the contracts. The contracts required classified materials assigned to, or generated by, petitioner to be stored in appropriate containers in FBO, the State Department, or the appropriate U.S. Foreign Service Post.

The personal service contracts required the State Department to provide to petitioner, to the extent practical, office space, furniture, telephone, office equipment (including word processors, computers, typewriters, calculators, copying machines, etc.), and office supplies that would ordinarily be used by Government employees doing similar work for the State Department. Pursuant to the contracts, petitioner was to work 5 days per week, Monday through Friday, 8 hours per day from 8:30 a.m. to 5:15 p.m., with a 45-minute lunch break, when she worked at the office location.

Petitioner performed approximately 40 percent of her services outside the United States. Petitioner received

reimbursements for travel expenses pursuant to the personal service contracts.

Petitioner was paid an annual salary of $67,162 ($32.18 per hour calculated on a work year of 2,087 hours) under the first service contract and $69,631 ($33.36 per hour calculated on a work year of 2,087 hours) under the second contract. Petitioner's salary was comparable to that of a Government employee classified as GS-13, step 7, including the locality pay differential for the Washington, D.C. area, during the contract periods. Petitioner received base rate increases at the same time and in the same proportion that regular State Department employees received their wage scale increases during the contract periods.

Petitioner was eligible to earn overtime for hours worked in excess of 40 hours per week and could earn compensatory time in lieu of overtime. Petitioner was required to obtain approval by the COR in advance of working overtime and/or taking compensatory time.

Petitioner was entitled to paid leave for official Federal holidays. If she worked on a Federal holiday, she was entitled to payment for overtime, or she could accrue compensatory time.

Petitioner accrued 4 hours of annual leave and 4 hours of sick leave each pay period during the contract periods. Unused annual and sick leave from the first contract period was

transferable to the second contract period. Under petitioner's contracts, accrued annual leave was not carried over in the event of direct hire.

Petitioner was entitled to "excused absences" for blood donations, voting, inclement weather, and military leave. Petitioner reported her time and attendance to the COR biweekly.

The personal service contracts required the State Department to withhold two parts of Social Security (old age/survivors disability insurance and Medicare) and Federal and State income taxes from petitioner's wages. The contracts required the State Department to "make the employer's contribution toward the two parts of Social Security in behalf of Contractor [petitioner]". The State Department issued Forms W-2, Wage and Tax Statement, to petitioner for years covered by the contract periods.

Petitioner was entitled to reimbursement of 50 percent of her actual annual health insurance costs. Petitioner was required to submit invoices for reimbursement of health insurance premiums to the COR on SF-1034, Public Voucher for Purchases and Services Other Than Personal. The personal service contracts stated that under current law, reimbursements of actual expenditures for health insurance were not reported as gross income for Federal income tax purposes. Petitioner was not covered by the State Department medical program, nor was she entitled to participate in the Federal Employees Health Benefits

Program.  Petitioner was not permitted to enroll in the Immediate Benefit Plan providing death benefits to Federal employees.

During the contract periods, petitioner was not permitted to park in the parking facility reserved for permanent, full-time employees of the State Department.  Petitioner was not eligible for (1) "Metrocheks", although State Department employees within the definition of 5 U.S.C. sec. 2105 were entitled to that benefit; (2) performance awards during the contract periods; or (3) membership in the Federal employees union while employed under her personal service contracts.

Petitioner did not make capital investments related to her personal service contracts during the periods covered by the contracts.  Petitioner worked exclusively for the State Department and had no other clients or employers.

4.  Mr. Urman's Evaluation Report

At the end of the term of the first personal service contract, Mr. Urman submitted a Contractor's Evaluation Statement, dated July 1, 1999, wherein he evaluated petitioner's performance under the contract.  Mr. Urman stated that petitioner was responsible for providing onsite and followup service to overseas posts to help the posts implement effective "SHEM" programs.  As part of that activity, petitioner had visited 18 posts, prepared reports, and provided followup activities to ensure that the posts understood and implemented her

recommendations.  Mr. Urman noted that petitioner had adapted to her responsibilities without having the advantage of a mentor or Mr. Urman's close supervision.  He rated petitioner's performance outstanding and recommended her for future contracts.

B.  Petitioner Released From Second Personal Service Contract and Appointed Federal Employee

On November 19, 1999, the State Department released petitioner from the second personal service contract and hired her as a full-time, permanent, appointed, Federal employee as an industrial hygienist.  Pursuant to the personal service contracts, petitioner's service under the contracts did not apply toward her annual leave accrual rate or retirement credit for direct hire service.  Petitioner was not paid for any unused accrued sick leave, and the leave was not carried over as a credit under her direct hire service.

Her appointment was subject to completion of a 1-year probationary period beginning November 11, 1999.  Her service for purposes of career tenure and FERS/FSPS began November 11, 1999.

C.  Contribution to Simplified Employee Pension, Deduction on the 1999 Return, Notice of Deficiency, and Tax Court Proceedings

On March 10, 2000, petitioner made an $8,638 contribution to her simplified employee pension for 1999.  Petitioner calculated the contribution on the basis of the income she earned under the personal service contracts.

Petitioner filed her 1999 Form 1040, U.S. Individual Income Tax Return with the Philadelphia Service Center of the Internal Revenue Service on April 15, 2000.  Petitioner reported the income she received from the State Department under the personal service contracts as wages in conformity with the Form W-2 issued by the State Department.  Petitioner deducted the $8,638 contribution to her simplified employee pension on the 1999 return.  Petitioner attached to the 1999 return an explanation of the contribution to her simplified employee pension.  On that statement she asserted that the Form W-2 did not accurately reflect her employment status with the State Department and stated that she was an independent contractor.

On June 13, 2003, respondent issued a notice of deficiency to petitioner for 1999 determining a $2,571 deficiency resulting from the disallowance of petitioner's deduction for the $8,638 contribution to her simplified employee pension for 1999.  The notice of deficiency explained that the deduction for the contribution to petitioner's simplified employee pension was not allowed because petitioner had not established that she was "entitled to this deduction".

Petitioner timely filed a petition in this Court for redetermination of the deficiency.

## Discussion

A.  Deductibility of Contributions to Simplified Employee Pension

A simplified employee pension is a qualified plan pursuant to which an employer makes direct contributions to its employees' individual retirement accounts or individual retirement annuities as defined under section 408(a) and (b).  Sec. 408(k).  Section 404(a)(8) permits an employer to deduct certain contributions to a simplified employee pension.  Individuals who have net earnings from self-employment (as defined in section 1402(a)) are treated as their own employers under a simplified employee pension plan. See secs. 401(c)(4), 408(k)(7).  Section 1402(a) defines "net earnings from self-employment" as the gross income derived by an individual from any trade or business less deductions attributable thereto.  Section 1402(c)(2) provides that performance of services as an employee does not constitute a trade or business for purposes of self-employment income, except for certain situations not relevant herein.  See also sec. 1.401-10(b)(3)(i), Income Tax Regs.  Employees include employees and elected and appointed officials of the Federal Government, as well as private-sector employees.  Sec. 31.3401(c)-1(a), Employment Tax Regs.

B.    Employee or Independent Contractor

Petitioner's entitlement to the deduction at issue hinges upon the proper classification of her work relationship with the State Department.

Petitioner asserts she performed services under the personal service contracts as an independent contractor.[2]  Respondent asserts that petitioner was a common law employee of the State Department.

The term "employee" is not defined in the Internal Revenue Code.  Consequently, whether an individual is an employee for purposes of section 401(c) is a factual question the answer to which depends upon the application of common law concepts.  See Clackamas Gastroenterology Associates, P.C. v. Wells, 538 U.S. 440, 444-445 (2003); Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-323 (1992); Weber v. Commissioner, 60 F.3d 1104, 1110-1111 (4th Cir. 1995), affg. 103 T.C. 378 (1994); Air Terminal Cab, Inc. v. United States, 478 F.2d 575, 578 (8th Cir. 1973); Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988); Burnetta v. Commissioner, 68 T.C. 387, 397 (1977); Simpson v. Commissioner,

---

[2]Petitioner asserts that she cannot be an employee of the State Department because the personal service contracts specified that she was not an appointed Federal employee as defined in 5 U.S.C. sec. 2105.  We need not address this argument, because we find that petitioner was an independent contractor and not a common law employee of the State Department.

64 T.C. 974, 984 (1975); Packard v. Commissioner, 63 T.C. 621, 629 (1975); sec. 1.1402(c)-1, Income Tax Regs.

Relevant factors courts consider to determine whether an employer/employee relationship exists between the service provider and the hiring party include: (1) The hiring party's right to control the manner and means by which the work is accomplished; (2) the skill required; (3) which party furnishes the equipment used and the place of work; (4) whether the work is part of the hiring party's regular business; (5) the worker's opportunity for profit or loss; (6) the manner in which the work relationship may be terminated; i.e., by one or both parties, with or without notice or explanation; (7) the permanency of the relationship; (8) the method of payment, whether by time or by the job; (9) whether the hiring party pays Social Security taxes; (10) whether the worker receives employee benefits; and (11) the relationship the parties believe they are creating. Clackamas Gastroenterology Associates, P.C. v. Wells, supra at 449-450; Nationwide Mut. Ins. Co. v. Darden, supra at 323-324; Horner v. Acosta, 803 F.2d 687, 693 (Fed. Cir. 1986); Spirides v. Reinhardt, 613 F.2d 826, 832 (D.C. Cir. 1979); Weber v. Commissioner, 103 T.C. at 387; Profl. & Executive Leasing, Inc. v. Commissioner, supra at 232; Simpson v. Commissioner, supra at 984-985; see also sec. 31.3401(c)-1(b), Employment Tax Regs. The factor generally considered fundamental for resolving the

question of whether an individual is an employee is the degree of control exercised by the person for whom the work is performed over the individual who renders the services. Weber v. Commissioner, 60 F.3d at 1110; Packard v. Commissioner, supra at 629-630; sec. 31.3401(c)-1(b), Employment Tax Regs. Although the degree of control is one of great importance, it is not exclusive. Bartels v. Birmingham, 332 U.S. 126, 130 (1947) (the relationship of employer-employee is not determined solely by the control which the principal may or could exercise over the details of the service rendered to his business by the worker). Whether a worker is an employee depends on all of the incidents of the relationship, and no one factor is determinative. Clackamas Gastroenterology Associates, P.C. v. Wells, supra at 451; Weber v. Commissioner, 60 F.3d at 1110.

1. Degree of Control

If the person receiving the benefit of a service has the right to control the manner in which the service is performed, the person rendering the service may be an employee. Weber v. Commissioner, 60 F.3d at 1110; Avis Rent A Car System, Inc. v. United States, 503 F.2d 423, 429 (2d Cir. 1974). The degree of control necessary to find employee status varies with the nature of the services provided by the worker. Weber v. Commissioner, 103 T.C. at 388; Reece v. Commissioner, T.C. Memo. 1992-335; Pulver v. Commissioner, T.C. Memo. 1982-437. The threshold level

of control necessary to find employee status is generally lower when applied to professional services than when applied to nonprofessional services. Weber v. Commissioner, 60 F.3d at 1110-1111.

The absence of the need to control should not be confused with the absence of the right to control. Air Terminal Cab, Inc. v. United States, supra at 580. The right to control is determinative, and it is not necessary that any control actually be exercised. Thus, courts must examine not only the control exercised by the principal, but also the degree to which the principal may intervene to impose control. Radio City Music Hall Corp. v. United States, 135 F.2d 715, 717 (2d Cir. 1943); deTorres v. Commissioner, T.C. Memo. 1993-161.

Section 31.3121(d)-1(c)(2), Employment Tax Regs., describes the right to control an employee as follows:

> the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. * * *

While the degree of control exercised over the details of the work is important, the crucial test lies in the right to control (1) the manner in which the service is to be performed; (2) the means to be used in its accomplishment; and (3) the result to be

obtained.  <u>Matthews v. Commissioner</u>, 92 T.C. 351, 361 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990).

To retain the requisite control over the details of an individual's work, the principal need not stand over the individual and direct every move made by the individual; it is sufficient if he has the right to do so.  <u>Weber v. Commissioner</u>, 103 T.C. at 388; <u>Profl. & Executive Leasing, Inc. v. Commissioner</u>, 89 T.C. at 234; <u>Simpson v. Commissioner</u>, 64 T.C. at 985; <u>Gierek v. Commissioner</u>, T.C. Memo. 1993-642.  Similarly, the principal need not set the employee's hours or supervise every detail of the work environment to control the employee.  <u>Gen. Inv. Corp. v. United States</u>, 823 F.2d 337, 342 (9th Cir. 1987).

Mr. Urman was the COR to whom petitioner was directly responsible.  Mr. Urman assigned projects to petitioner, provided policy guidance, and established general priorities.  Mr. Urman could not, however, alter or modify the personal service contracts.  Therefore, Mr. Urman could not assign projects that required services other than those delineated in the contracts, change petitioner's hours, or transfer her to another department.

Petitioner was responsible for planning and carrying out the projects delivered under the personal service contracts, with little administrative direction.  She was responsible for the quality and technical accuracy of all services and work product. Petitioner's completed work was considered technically

authoritative and normally accepted without significant change. Although Mr. Urman had the right to inspect and test all services petitioner provided, he did not have the right to change her work product.

We conclude that the control the Government had over the details of petitioner's work is more consistent with a principal/independent contractor relationship than an employer/employee relationship. This factor favors petitioner.

2. Special Skill

If a service requires a special skill to solve a problem, the specialist called in to solve the problem is likely to be an independent contractor. By contrast, a worker hired to perform the essential, everyday chores of the employer's operation is likely to be an employee. McLaughlin v. Seafood, Inc., 861 F.2d 450 (5th Cir. 1988) (the workers were not specialists called in to solve a problem, but laborers who performed the essential, everyday chores of their employer's operation).

The State Department was authorized under 22 U.S.C. sec. 296 to contract for petitioner's services as an expert industrial hygienist. The State Department hired petitioner to implement its occupational health program by providing a responsive health program; conduct industrial hygiene and environmental health inspections worldwide; inspect and monitor facilities, processes, or activities which might adversely affect an employee's health

or the environment; recommend or implement measures to eliminate or alleviate hazards; specify equipment to protect employees, the public, or the environment from toxic chemicals or physical agents; plan and develop a system for monitoring, coordinating, and collating industrial hygiene data generated by the industrial hygiene contractor and/or in-house resources; and develop an industrial hygiene management information system.

Petitioner wrote comprehensive reports for the safety director, or the senior industrial hygienist, with little administrative direction. Her completed work was considered technically authoritative and normally accepted without significant change. Petitioner was called in to solve a problem.

This factor supports a finding that petitioner was an independent contractor.

3. <u>Furnishing of Equipment and Facilities</u>

If the worker has a substantial investment in his/her own tools, equipment, or facilities, he/she may be an independent contractor. Cf. <u>Breaux & Daigle, Inc. v. United States</u>, 900 F.2d 49, 53 (5th Cir. 1990). If, on the other hand, the worker performs all work at an office furnished by the principal/employer, he/she may be an employee.

The State Department provided petitioner with office space, furniture, telephone, office equipment (including word processors, computers, typewriters, calculators, copying

machines, etc.), and office supplies that would ordinarily be used by Government employees doing similar work for the State Department.  Petitioner worked at the office furnished by the State Department, except for the periods she spent at foreign mission sites.  Normally, these circumstances would indicate an employer-employee relationship.

With certain limited exceptions, 48 C.F.R. sec. 45.302-1 (2004) requires contractors of Federal agencies to furnish all facilities in performance of their contracts with the agencies. Title 48 C.F.R. sec. 45.302-1(a) (2004) permits an agency to furnish facilities to contractors, inter alia, for support of industrial preparedness programs and as otherwise authorized by law or regulation.  Title 48 C.F.R. sec. 45.302-3(a) (2004) permits an agency to provide facilities to a contractor under a contract (other than a facilities contract) when, inter alia, the contract performance period is 12 months or less; the contract is for services and the facilities are to be used in connection with the operation of a Government-owned plant or installation; the contract is for work within an establishment or installation operated by the Government.  48 C.F.R. sec. 45.302-3(a)(3), (5), (6) (2004).

Petitioner's personal service contracts were for industrial hygienist services for periods of 12 months and called for services related to the operation of State Department

installations. Petitioner was responsible for managing, coordinating, and implementing the State Department's worldwide industrial hygienist field technical services program. She inspected and monitored State Department facilities worldwide for health hazards. She recommended or implemented measures to eliminate or alleviate hazards and trained employees in the use, handling, and disposal of toxic chemicals and physical agents. During the first contract period, petitioner visited 18 posts and performed approximately 40 percent of her services outside the United States. Petitioner's services required access to classified information that was required to be kept at the State Department. Under these circumstances, we think the State Department's providing petitioner with office facilities and supplies is consistent with treating petitioner as an independent contractor, as well as, treating her as an employee. This factor is neutral.

        4.   Integral Part of the Business

The State Department's FBO operates the Foreign Service properties in foreign countries. The services petitioner provided under the personal service contracts were integral to the State Department's obligation to ensure the safety of Government employees who worked in those properties. Petitioner did not perform services for other clients. See Breaux & Daigle, Inc. v. United States, supra at 53 (financial success of

processor of crab meat depended upon crab meat pickers; therefore, crab meat pickers' services were integral part of processor's business); <u>Air Terminal Cab, Inc. v. United States</u>, 478 F.2d at 581 (taxicab drivers were performing personal services constituting integral part of taxpayer's business operations).  This factor favors respondent.

5.  <u>Opportunity for Profit or Loss</u>

If a person performing a service has an opportunity to profit depending on his management skill, he may be an independent contractor.  <u>United States v. Silk</u>, 331 U.S. 704, 717-718 (1947).  If a person performing a service undertakes a substantial cost, for example by employing and paying his own laborers, he may be an independent contractor.  <u>Id.</u>  Petitioner had no opportunity for profit or loss.  The amount of pay she received depended only upon the number of hours she worked.  While petitioner was given a project to complete, the amount she would earn did not depend upon completion of the project.  This factor favors respondent.

6.  <u>Termination of Relationship</u>

In determining whether an employer-employee relationship exists, courts consider the manner in which the work relationship can be terminated; i.e., by one or both parties, at any time, with or without notice or explanation.  <u>Horner v. Acosta</u>, 803 F.2d at 693; <u>Spirides v. Reinhardt</u>, 613 F.2d at 832; <u>Ewens &</u>

<u>Miller, Inc. v. Commissioner</u>, 117 T.C. 263, 273 (2001); <u>Day v. Commissioner</u>, T.C. Memo. 2000-375. Usually, the right to discharge a worker, and the worker's right to quit, at any time indicates an employer-employee relationship. See <u>United States v. W.M. Webb, Inc.</u>, 397 U.S. 179, 193 (1970); <u>Breaux & Daigle, Inc. v. United States</u>, 900 F.2d at 53; <u>Air Terminal Cab, Inc. v. United States</u>, 478 F.2d at 581. The right to discharge without cause is a factor that should be considered in determining whether a person is an employee. <u>Sec. Storage & Van Co. v. United States</u>, 528 F.2d 1166, 1167 (4th Cir. 1975).

Both petitioner and the State Department had the right to terminate the personal service contracts without cause with 30 days' notice. The State Department could terminate petitioner's services for cause only by written notice from the contracting officer to petitioner. The State Department could not discharge petitioner at any time without notice or explanation. This factor favors petitioner.

7. <u>Permanency of the Relationship</u>

A transitory work relationship may point toward independent contractor status. <u>Herman v. Express Sixty-Minutes Delivery Serv., Inc.</u>, 161 F.3d 299, 305 (5th Cir. 1998). Petitioner performed work under the personal service contracts for a little over 1 year. In November 1999, the State Department released petitioner from the second personal service contract and hired

her as a full-time, permanent, appointed, Federal employee as an industrial hygienist. Petitioner's employment was subject to completion of a 1-year probationary period beginning November 11, 1999. Her service for purposes of career tenure and FERS/FSPS also began November 11, 1999. Petitioner's service under the personal service contracts did not apply toward her annual leave accrual rate or retirement credit as a Federal employee. Petitioner was not paid for any unused accrued sick leave, and the leave was not carried over as a credit under her direct hire service.

The relationship created under the personal service contracts was intended to be a temporary one entered into for a stated period. It appears that, in November 1999, the State Department, impressed with petitioner's performance, decided to hire her as an employee. The length of petitioner's employment is consistent with her status as an independent contractor. Cf. Lewis v. Commissioner, T.C. Memo. 1993-635 (7-year employment consistent with employee status). This factor favors petitioner.

8. Method of Payment

Courts consider whether the worker was paid by time, indicative of an employee, or by the job, indicative of an independent contractor. Petitioner was paid on the basis of a 40-hour week. She worked 5 days per week, Monday through Friday, 8 hours per day from 8:30 a.m. to 5:15 p.m., with a 45-minute

lunch break.  Petitioner reported her time and attendance to Mr. Urman biweekly.  This factor supports respondent.

9.  Social Security Taxes

Another factor courts have considered in determining the status of workers is whether there was a withholding of taxes and payment into worker's compensation and unemployment insurance funds.  Profl. & Executive Leasing, Inc. v. Commissioner, 862 F.2d 751, 753 (9th Cir. 1988).

The personal service contracts required the State Department to withhold two parts of Social Security (old age/survivors disability insurance and Medicare) and Federal and State income taxes from petitioner's wages.  The contracts required The State Department to "make the employer's contribution toward the two parts of Social Security in behalf of Contractor".  (Emphasis added.)  That language is appropriate where services are performed for the Government by an employee of a contractor (here a small, woman-owned business), and the Government agrees to pay the contractor-employer's contribution for the two parts of Social Security.  The provision is consistent with treating petitioner as an employee of her own business, as well as treating her as a State Department employee.  This factor is neutral.

10.  Employee Benefits

Receipt of employee benefits is an important factor in determining whether an employer-employee relationship exists. Packard v. Commissioner, 63 T.C. at 632.

a.  Annual Leave

Petitioner accrued 4 hours of annual leave and 4 hours of sick leave each pay period during the contract periods.  Unused annual and sick leave from the first contract period was transferable to the second contract period.  Petitioner was entitled to "excused absences" for blood donations, voting, inclement weather, and military leave.  This factor supports respondent.

b.  Retirement Benefits

Petitioner was not entitled to any retirement benefits. Moreover, when petitioner was appointed as a direct-hire employee, her service under the personal service contracts was not credited toward her retirement credit for direct hire service.  This factor favors petitioner.

c.  Health Benefits

Although petitioner was not entitled to participate in the State Department medical program or the Federal Employees Health Benefits Program, she was entitled to reimbursement of 50 percent of her actual annual health insurance costs.  This factor slightly favors respondent.

d.    Other Benefits

Petitioner was not permitted to enroll in the Immediate Benefit Plan providing death benefits to Federal employees. During the contract periods, petitioner was not permitted to park in the parking facility reserved for permanent, full-time, employees of the State Department.  Petitioner was not eligible for (1) "Metrocheks", although State Department employees within the definition of 5 U.S.C. sec. 2105 were entitled to that benefit; (2) performance awards during the contract periods; or (3) membership in the Federal employees union while employed under her personal service contracts.   This factor favors petitioner.

11.   Relationship the Parties Thought They Created

Courts have considered the relationship the parties believed they were creating.  Simpson v. Commissioner, 64 T.C. at 984-985.

The State Department apparently believed that its relationship with petitioner for tax purposes was that of employer-employee.  The State Department withheld Federal income taxes and FICA taxes from petitioner's paychecks and issued Forms W-2, rather than Forms 1099, to petitioner for years covered by the contract periods.  Moreover, we are mindful that, although petitioner stated on her return that she was an independent contractor, she did not pay any self-employment taxes for 1999. This factor favors respondent.

C. Conclusion

Courts have noted that the determination of whether an employer/employee relationship existed can be a close question of fact. See, e.g., Eren v. Commissioner, 180 F.3d 594, 597 (4th Cir. 1999) ("Although this is arguably a close case, we cannot say from these facts that the tax court was clearly erroneous in finding that FBO had the right to control Eren's activities."), affg. T.C. Memo. 1995-555; Lifetime Siding, Inc. v. United States, 359 F.2d 657, 659 (2d Cir. 1966) (some evidence indicated employee status and some pointed toward an independent contractor status demonstrating "what may be said to have been a close question of fact"); Serv. Trucking Co. v. United States, 347 F.2d 671, 673 (4th Cir. 1965) ("It cannot reasonably be said that this record points indisputably to but a single answer. * * * But analysis of the facts warrants different determinations depending on the relative weight and significance the fact finder attaches to various circumstances shown."). Some cases examining the relationship created by a personal service contract entered into by a Federal agency and a professional, similar to petitioner's personal service contracts with the State Department, have concluded that the contract created an employee/employer relationship. See, e.g., Eren v. Commissioner, supra; Marckwardt v. Commissioner, T.C. Memo. 1991-347; Juliard v. Commissioner, T.C. Memo. 1991-230; Matt v. Commissioner, T.C. Memo. 1990-209.

Other cases have found that the taxpayer was an independent contractor. See, e.g., <u>Chin v. United States</u>, 57 F.3d 722 (9th Cir. 1995); <u>deTorres v. Commissioner</u>, T.C. Memo. 1993-161.

In <u>Eren v. Commissioner</u>, <u>supra</u>, Mr. Eren was an architect who worked for the State Department's FBO from the late 1970s to at least 1990. He worked as a project director for the FBO under personal service contracts beginning in 1984. From July 1988 to June 1990, Mr. Eren worked as project director for the construction of an annex to the U.S. Embassy in Bogota, Colombia. He performed the essential, everyday chores of the FBO's operations of constructing and maintaining embassies. Mr. Eren supervised the construction of the annex; he was bound by the construction documents for the building and could not exceed the budget. Mr. Eren's contract required him to "perform appropriate functions and obligations in accordance with procedures or other directives issued by the Contracting Officer or his designee". He was required to maintain a daily log and submit monthly progress reports. Mr. Eren was not a specialist hired to solve a problem. We found that Mr. Eren was an employee of the FBO. On appeal, the U.S. Court of Appeals for the Fourth Circuit affirmed our decision, but noted that it was arguably a close case.

The case at bar is also a close case, but the totality of the stipulated facts leads us to conclude that petitioner's relationship with the State Department under the personal

services contracts materially differs from Mr. Eren's relationship with the FBO. Although petitioner and Mr. Eren were both professionals, the State Department hired petitioner as a specialist to evaluate and solve a problem. She evaluated work environments for health hazards, recommended and implemented measures to eliminate those hazards, and developed an industrial hygiene management information system. Petitioner's work was considered technically authoritative and accepted without significant change. The State Department had little control over the means and manner by which petitioner's work was accomplished. Petitioner worked under the broad guidance of the COR, who made assignments and provided statements of policy and overall scope to guide petitioner. Petitioner was responsible for planning and carrying out the projects. She submitted her evaluations and recommendations to the COR in comprehensive written reports when the project was completed; she was not required to maintain daily logs or submit monthly reports. In sum, the FBO had more control over Mr. Eren than the State Department had over petitioner.

Moreover, petitioner's work relationship with the State Department was more transitory than that of Mr. Eren. Mr. Eren worked for the State Department under his personal service contracts for many years, whereas petitioner worked for the State Department under her personal service contracts for a little over 1 year.

We conclude that petitioner's relationship with the State Department under the personal services contracts was that of an independent contractor.  As such, petitioner is entitled to a deduction for her contribution to her simplified employee pension for 1999.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.