T.C. Summary Opinion 2009-26

UNITED STATES TAX COURT

JOHN FRANCIS O'ROURKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8691-07S.          Filed February 25, 2009.

John Francis O'Rourke, pro se.

<u>Jon D. Feldhammer</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies of $2,594 and $2,646, respectively, in petitioner's 2003 and 2004 Federal income taxes.

The issue for decision is whether petitioner is entitled to exclude income earned working at the U.S. Embassy in Mexico City.

## Background

Some of the facts have been stipulated, and we incorporate the stipulation and the accompanying exhibits by this reference. Petitioner lived in California when he filed the petition.

During 2003 and 2004 (the years in issue) petitioner resided in Mexico City, Mexico, and worked continuously and exclusively for the U.S. Drug Enforcement Agency (DEA) as an administrative unit secretary in the DEA's offices in the U.S. Embassy. The U.S. Department of State paid petitioner for the work he performed for the DEA at the Embassy.

Petitioner worked 8-hour days, 5 days a week, on a regular schedule prescribed by the DEA. The U.S. Government provided petitioner with the equipment and supplies required to perform his job. Petitioner's duties included typing travel orders and job postings, making hotel and food reservations, arranging moves and securing housing for DEA employees, and entering requests for money into a proprietary DEA computer system that determined whether the requested funds could be issued.

Petitioner and the Government executed a contract which referred to petitioner as a "Contractor" and provided for an hourly rate of pay, five 8-hour days per week, and annual and sick leave earned at the rate of 4 hours every 2 weeks.[2] The contract also stated that the Government would "withhold an amount from the U.S. Citizen Contractor's gross salary for Federal withholding and FICA taxes". Under the contract, either party could terminate the contract on 15 days' notice, and the Government could terminate without advance notice upon petitioner's failure to fulfill any terms of the contract. Petitioner's work for the DEA did not provide any opportunity for profit or loss outside the income and benefits enumerated in the contract.

The U.S. Embassy distinguished between local hire contractors, who received limited benefits, and direct hire employees, who were DEA employees from the United States with the full panoply of Federal employee benefits. The Embassy also instructed its local hire contractors not to present themselves as U.S. Government employees.

Petitioner did not pay any taxes to the Mexican Government on his income from the DEA for 2003 or 2004. Petitioner timely filed U.S. individual income tax returns for 2003 and 2004. On

---

[2] The Contracting Officer of the U.S. Embassy in Mexico City, Mexico, executed the contract on behalf of the U.S. Drug Enforcement Agency.

those returns petitioner reported his income from the DEA as wages; included Forms 2555-EZ, Foreign Earned Income Exclusion; excluded all of his income; and claimed refunds for all Federal income taxes withheld.

Respondent issued a notice of deficiency disallowing petitioner's foreign earned income exclusion on the grounds that his payments from the U.S. Department of State were not foreign earned income but rather income from a U.S. source.

In his petition and at trial petitioner asserted that because he was a contractor and not a regular employee of the U.S. Government, he is entitled to the foreign earned income exclusion.

### Discussion

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that these determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner has neither alleged that section 7491(a) applies nor established his compliance with its requirements. Petitioner therefore bears the burden of proof.[3]

---

[3] As the facts are not in dispute, the burden of proof does not play a role in our findings or conclusions.

Every citizen of the United States is subject to U.S. income tax on his worldwide income. Sec. 1; sec. 1.1-1(b), Income Tax Regs. Section 911(a) permits U.S. citizens residing and working abroad to elect to exclude foreign earned income from U.S. income taxation. However, "foreign earned income" does not include amounts "paid by the United States or an agency thereof to an employee of the United States or an agency thereof". Sec. 911(b)(1)(B)(ii).

There is no dispute that petitioner worked for an agency of the United States in 2003 and 2004 when he was a secretary in Mexico City for the DEA and paid by the Department of State. Thus, if petitioner was an employee, he is not entitled to exclude this income. We must decide whether petitioner worked as an independent contractor or as a contract employee.

Section 911 does not define "employee". Accordingly, we apply common law rules to determine whether a taxpayer is an employee. See United States v. Silk, 331 U.S. 704 (1947); Matthews v. Commissioner, 907 F.2d 1173, 1175 (D.C. Cir. 1990), affg. 92 T.C. 351 (1989); Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. 60 F.3d 1104 (4th Cir. 1995).

Whether an individual is an employee must be determined on the basis of the specific facts and circumstances involved. Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988); Simpson v.

Commissioner, 64 T.C. 974, 984 (1975). Relevant factors include: (1) The degree of control exercised by the principal over the details of the work; (2) the relationship the parties believe they are creating; (3) whether the work is part of the principal's regular business; (4) which party invests in the facilities used in the work; (5) the individual's opportunity for profit or loss; (6) the permanency of the relationship and the right to discharge; and (7) the provision of benefits typical of those provided to employees. NLRB v. United Ins. Co., 390 U.S. 254, 258-259 (1968); Weber v. Commissioner, supra at 387; Profl. & Executive Leasing, Inc. v. Commissioner, supra at 232. No one factor is determinative; rather, all the incidents of the relationship must be assessed and weighed. NLRB v. United Ins. Co., supra at 258.

1.   Degree of Control Exercised by the DEA

Although no single factor is dispositive, the test usually considered fundamental is whether the alleged employer has the right to control the activities of the individual whose status is in issue. Weber v. Commissioner, supra at 387; Profl. & Executive Leasing, Inc. v. Commissioner, supra at 232-233. An employer can retain the requisite control over the details of an employee's work even without standing over the employee and directing every move he makes. Weber v. Commissioner, supra at

388; <u>Profl. & Executive Leasing, Inc. v. Commissioner</u>, <u>supra</u> at 234; <u>Simpson v. Commissioner</u>, <u>supra</u> at 985.

It is clear that petitioner performed his administrative support work in the DEA's offices in the U.S. Embassy, following DEA's procedures and guidelines, and that the DEA dictated the days and hours petitioner worked. We conclude that the DEA exercised the requisite control over petitioner, and this factor supports a finding that petitioner was an employee of the Government.

2.    <u>The Relationship the Parties Believed They Were Creating</u>

The contract petitioner signed with the DEA labels petitioner the "Contractor" for the purposes of that document. Petitioner relies upon that label and the convention at the Embassy to distinguish between the local hire contractors and direct hire workers. Petitioner explained that even though he was a U.S. citizen, he was "in many respects on the same level as the Mexican contract employees." Finally, he relies on instructions he received not to refer to himself as a U.S. Government employee.

The label used in the contract is "Contractor" not "Independent Contractor". The contract specifies that the Government would withhold Federal income and employment taxes from petitioner's gross pay. Such withholding is inconsistent

with the assertion that the parties intended petitioner to be an independent contractor for U.S. income tax purposes.

This factor supports a finding that petitioner was a contract employee; i.e., an employee operating under a contract.

3.   Whether the Work Is Part of the Principal's Business

Petitioner supported DEA operations by providing administrative support in the DEA's offices in the Embassy.  This support was in furtherance of the DEA's mission, and this factor supports a finding that petitioner was an employee.

4.   Investment in Facilities Used in the Work

The DEA and the Embassy provided the office, tools, and supplies required for petitioner to provide the administrative support for which he contracted.  Petitioner did not provide any facilities or equipment.  This factor supports a finding that petitioner was an employee.

5.   Petitioner's Opportunity for Profit or Loss

Petitioner's opportunity for profit was limited to the hourly wage specified in the contract.  This factor supports a finding that petitioner was an employee.

6.   The Permanency of the Relationship and the Right To Discharge

Petitioner argues that his having a contract that expired annually and would be renewed only if the budget permitted and his not having the chance of promotion to direct hire status made him an independent contractor and not an employee.

The contract provided for renewal for additional periods at the Government's option and with the Contractor's concurrence. The contract also stated that either party could terminate the agreement on 15 days' notice and that the Government could terminate without advance notice "upon the Contractor's failure to fulfill any terms of this contract".

The permanency of a relationship indicates an employer-employee relationship, while a transitory relationship does not. Levine v. Commissioner, T.C. Memo. 2005-86; Hathaway v. Commissioner, T.C. Memo. 1996-389. Additionally, the right to discharge a worker and the worker's right to quit at any time indicate an employer-employee relationship. Levine v. Commissioner, supra.

This factor supports a finding that petitioner was an employee.

7.  The Provision of Benefits Typical of Those Provided to Employees

The Government trained petitioner and provided him with annual leave, sick leave, and paid holidays. These benefits are typical of those an employer provides an employee. The DEA did not provide petitioner secure housing, health care, access to the Embassy health unit, or certain other benefits provided to its direct hire workers. Nevertheless, this factor supports a finding that petitioner was an employee.

## Conclusion

Despite the fact that petitioner was treated differently from direct hire employees, the record overwhelmingly supports a finding that petitioner was an employee of the U.S. Government. Accordingly, petitioner's earnings from working for the DEA are not foreign earned income. Sec. 911(b)(1)(B)(ii). Petitioner is not entitled to exclude those wages for 2003 and 2004, and respondent's determination is sustained.[4]

To reflect our disposition of the issue,

Decision will be entered

for respondent.

---

[4] Because petitioner did not pay income taxes to the Government of Mexico in 2003 or 2004, and he seeks to exclude his compensation from Federal income taxes as well, our comment in Matt v. Commissioner, T.C. Memo. 1990-209, is equally apt here:

Finally, we note that the exclusion of foreign earned income was designed to prevent United States Government employees from escaping taxation on their income by both the United States and the foreign governments. Soboleski v. Commissioner, 88 T.C. 1024, 1030 (1987), affd. without published opinion 842 F.2d 1292 (4th Cir. 1988). Congress was concerned that section 911 not provide an unjustifiable windfall for those individuals who paid neither Federal nor foreign income taxes. See Smith v. Commissioner, 77 T.C. 1181, 1185 (1981), affd. 701 F.2d 807 (9th Cir. 1983). Petitioner's position is precisely that which Congress sought to preclude by enacting section 911(b)(1)(B)(ii); that is, she paid no foreign income taxes in 1984 on her compensation from USAID and seeks to avoid the payment of Federal income taxes as well by excluding that compensation from her gross income.