T.C. Memo. 2012-298

UNITED STATES TAX COURT

RICHARD E. BLODGETT, JR., AND ORA L. BLODGETT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9449-11.                    Filed October 24, 2012.

Richard E. Blodgett, Jr., and Ora L. Blodgett, pro sese.

<u>John R. Mikalchus</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined a $3,305 deficiency in petitioners'

2008 Federal income tax.  The issue for decision is whether certain payments from

the Chelsea Groton Savings Bank (bank) to petitioner Richard Blodgett were

employee wages or self-employment income.  For the reasons stated herein, we

**[\*2]** find that Mr. Blodgett was not an employee of the bank and is therefore liable for the deficiency in income tax.

FINDINGS OF FACT

Petitioners resided in Connecticut when they filed their petition. They filed a joint income tax return for the 2008 tax year.

Mr. Blodgett graduated from college in 1960 and took a job as a mining engineer in Connecticut. He continued working in the mining industry with various companies throughout the 1960s and 1970s. Over the years Mr. Blodgett became involved in his community, serving as president and on the board of directors of the local Rotary Club.

One afternoon in February 1977, while Mrs. Blodgett was home alone sitting at a picnic table in their yard, the president of the Groton Savings Bank[1] pulled into the driveway. The bank president had served with Mr. Blodgett on the board of directors at the Rotary Club. He was impressed with Mr. Blodgett's work and conveyed to Mrs. Blodgett that he wanted Mr. Blodgett to serve on the board

---

[1]The Groton Savings Bank later merged with the Chelsea Savings Bank to become the Chelsea Groton Savings Bank. The bank is a mutual community savings bank chartered in the State of Connecticut in 1854. A mutual community savings bank is not a stock-issuing corporation; rather, it is a bank owned by members of the community who are represented by the bank's board of corporators. The bank's business involves taking deposits and making loans and investments; however, its earnings accrue entirely to the benefit of its depositors.

**[*3]** of trustees at the bank. Upon learning that Mr. Blodgett would not be home until later that day, the bank president thanked Mrs. Blodgett for her time and asked if she would relay the message to her husband.

Later that evening, after Mr. Blodgett returned home from his job at the local mining mill, Mrs. Blodgett informed him of the bank president's peculiar visit earlier that day. Because Mr. Blodgett was relatively unfamiliar with banking practices, he did not understand why he would be considered for a position on the bank's board of trustees. That same evening the bank president returned to speak with Mr. Blodgett about the position. While hesitant at first, Mr. Blodgett eventually accepted the offer and was elected a corporator and trustee of the bank on February 17, 1977.

I. Corporators

As mentioned supra, the bank is owned by members of the community who are represented by a board of corporators.[2] The corporators: (1) oversee the actions of the board of trustees; (2) establish the bylaws of the bank in compliance with its State charter and applicable State and Federal laws and regulations; and (3) may petition for a special meeting of corporators at any time to consider and act on any corporate subject. They are responsible for annually electing, as

---

[2]Corporators operate independently--they are not employees of the bank.

[*4] needed, new corporators, trustees, and officers.[3]  Corporators may remove trustees at any time with or without cause.[4]  They review the performance of the board of trustees primarily at the annual meeting of the bank.  While the management of the bank has no control over the actions of the corporators, the bank's bylaws provide that a corporator will be removed from his position after three consecutive unexcused absences from the "Annual Meeting of the Bank".  There is no mandatory retirement age for corporators.  Finally, corporators are paid a fee for corporator meetings which is set and approved by the board of trustees in their corporate governance role.

## II.  The Board of Trustees

A trustee must be a corporator of the bank.  There can be no fewer than 7 and no more than 15 trustees.  Trustees take an oath of office upon their election, promising to faithfully discharge their duties as trustees, including duties as committee members, in the best interest of the bank and to the best of their ability.  The bank's bylaws provide that a trustee shall discharge his duties "in a manner

---

[3] Trustees are elected for three-year terms and officers are elected for one-year terms.

[4] The number of votes required to remove a trustee is unclear from the record.  Respondent asserts in his pretrial memorandum and on brief that a majority vote is required to remove a trustee.  Nowhere in the record do petitioners object to that assertion.

**[*5]** (s)he reasonably believes to be in the best interest of the corporation." The bank treats the work of the board of trustees and individual trustees as its own.

A. Meetings

The bank bylaws require at least monthly meetings of the board of trustees; however, special meetings may be called at any time by the president or the board of trustees or as otherwise provided in the bylaws. The bank president or the board of trustees sets the agenda for the meeting. The board of trustees may add to the agenda of the meeting or at any time hold an executive session without the presence of the management members of the board of trustees. The bank provides board members with private meeting rooms, banking publications, and office supplies.

B. Responsibilities

The board of trustees operates independently from the management of the bank. They are not directly involved in the bank's day-to-day operations. In compliance with the bank bylaws and applicable State and Federal laws and regulations, the board of trustees: (1) approves the strategic vision, strategy, and policies of the bank; (2) supervises the management of the bank; (3) establishes

[*6] committees of the board of trustees;[5] (4) signs certain documents of performance, consent, and confidentiality; and (5) keeps its work confidential. The activities of the board of trustees and individual trustees are examined by State and Federal regulatory authorities for compliance with the bylaws and policies of the bank, as well as applicable State and Federal laws and regulations.

C.  Compensation

Trustee's fees are set and approved by the board of trustees in their corporate governance role. Trustees are paid a set retainer fee plus additional set fees for: (1) board of trustees meeting attendance; (2) committee meeting attendance; and (3) special duties on the board. For example, the following fees, as applicable, were paid to trustees during 2009 and 2010:  (1) monthly retainer--$850; (2) board meeting fee--$1,000; (3) lead director board meeting fee--$1,300; (4) secretary board meeting fee--$1,100; and (5) committee meeting fee--$800.

D.  Continuing Education

The bank conducts yearly mandatory training and pays for continuing education for trustees in compliance with bank policy and applicable State and Federal laws and regulations.

---

[5]The board of trustees establishes additional committees not mandated by State or Federal law in compliance with the bank bylaws.

**[\*7]**  E.  <u>Insurance and Benefits</u>

The bank covers trustees with a trustee liability indemnification insurance policy.  Moreover, the bank bylaws provide indemnification and reimbursement to trustees, as well as officers and employees, for "reasonable expenses necessarily incurred by him/her in connection with the defense or reasonable settlement of any action, suit, or proceeding in which (s)he is made a party by reason of her/his being or having been a trustee, officer or employee of the corporation".

The bank provides trustees with life insurance, disability insurance, and retirement benefits;[6] however, the bank does not provide trustees with health insurance.  Mr. Blodgett is fully vested in the bank's trustee retirement plan from which he receives a monthly pension check.  He makes no contributions to his IRA, or to any other pension, profit-sharing, or retirement plans, by using earnings from the bank.

III.  <u>Mr. Blodgett's Role</u>

Mr. Blodgett has continued to live in the community served by the bank since initially being elected a trustee in 1977.  He was reelected by the corporators

---

[6]The bank has a mandatory retirement age for trustees, although they may resign at any time upon written notice to the bank.  Upon retirement a trustee receives a defined monthly pension check for a defined number of years. The trustee's retirement plan is separate and distinct from the bank's "employee defined benefit plan".

**[*8]** as a trustee every three years until his retirement from his trustee position on August 5, 2011.

Before his retirement, Mr. Blodgett's duties as trustee averaged fewer than 20 hours per month. His service on various committees of the board of trustees over the years included a position as chairman of the audit committee. He has not held himself out as a contractor to any person, bank, or organization for any services or products, nor has he supplied any services or products as a contractor or under contract to any person, bank, or organization. Mr. Blodgett did not claim any tax deductions for business expenses as a corporator or trustee--the bank paid all expenses.

Mr. Blodgett's primary relationship with the bank was as a member of the board of trustees. He never received any financial services from the bank.[7] Mr. Blodgett currently serves without fee as a member of the board of trustees of the bank's philanthropic foundation, and he continues to serve as a corporator, receiving an annual fee of $100.

---

[7]Mr. Blodgett has never received a loan or made a deposit with the bank, although he does maintain a safe deposit box for which he pays $20 annually.

**[*9]** IV.  The Notice of Deficiency

Mr. Blodgett served as a corporator and trustee of the bank in 2008.[8]  The bank issued Mr. Blodgett a Form 1099-MISC, Miscellaneous Income, reporting "nonemployee compensation" of $26,750 for his trustee services.[9]  Petitioners reported the "nonemployee compensation" on line 21 of their timely filed 2008 joint income tax return as "other income"; however, they did not report or pay any associated self-employment tax.[10]  Respondent issued a notice of deficiency to petitioners for the 2008 tax year determining a deficiency in income tax of $3,305 arising from petitioners' failure to pay self-employment tax associated with Mr. Blodgett's trustee compensation.

---

[8]Aside from his services provided to the bank, Mr. Blodgett was retired in 2008.  His primary employment before retiring in 1991 was as a mining engineer for U.S. Silica Co.

[9]The bank classifies members of the board of trustees as independent contractors.

[10]Petitioners have reported Mr. Blodgett's income from his position as trustee as "other income" not subject to self-employment tax every year since Mr. Blodgett began his job as trustee. The 2008 tax year is the first year respondent has decided to challenge petitioners' classification.

**[*10]**                                OPINION

Section 1401[11] imposes a tax on the self-employment income of every individual. The term "self-employment income" means the net earnings from self-employment derived by an individual during any taxable year. Sec. 1402(b). The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual less the deductions attributable thereto. Sec. 1402(a). The term "trade or business", when used with reference to self-employment income or net earnings from self-employment, has the same meaning as when used in section 162; however, the term "trade or business" does not include services performed by an individual as an employee. Sec. 1402(c)(2).

Under section 3121(d)(2), the term "employee" includes any individual who has the status of an employee under the common law. Paragraphs (1), (3), and (4) of section 3121(d) describe other individuals who are considered employees regardless of their status under the common law. Individuals described in those paragraphs are commonly referred to as "statutory" employees. Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 126 (2002), aff'd, 93 Fed.

---

[11]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*11] Appx. 473 (3d Cir. 2004). One such category of statutory employees consists of officers of corporations. Sec. 3121(d)(1). Section 31.3121(d)-1(b), Employment Tax Regs., limits that category as follows:

> (b) Corporate officers.--Generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is considered not to be an employee of the corporation. A director of a corporation in his capacity as such is not an employee of the corporation.

Respondent contends that Mr. Blodgett's trustee duties are "substantially similar" to and serve the same "essential purpose" as the duties performed by a director on a board of directors at another bank. As a result, respondent asserts that members of the board of trustees should be classified for employment tax purposes in exactly the same manner as members of a board of directors are classified--as independent contractors under section 31.3121(d)-1(b), Employment Tax Regs. Therefore, respondent concludes, Mr. Blodgett's earnings from his services as a trustee should be subject to self-employment tax.

Conversely, petitioners argue that there are substantial differences between a director and a trustee; primarily, that: (1) trustees act on behalf of the community while directors act on behalf of the shareholders; (2) trustees are not burdened with "Securities and Exchange Commission laws and regulations that

**[*12]** apply to stock corporations"; and (3) trustees stand for election every three years by corporators while directors stand for election annually by shareholders. Petitioners believe these differences are enough to distinguish a director from a trustee for purposes of section 31.3121(d)-1(b), Employment Tax Regs. Rather, petitioners believe Mr. Blodgett's position is more analogous to that of an officer of the bank, similar to a president or vice president.

The parties have not found any statute, regulation, IRS ruling, or caselaw that specifically characterizes the income earned from being a trustee on a board of trustees of a community savings bank as income from self-employment or as income from being an employee.[12] For the following reasons, we follow section

---

[12]Respondent fails to cite a single case where we have applied sec. 31.3121(d)-1(b), Employment Tax Regs., to conclude that a director is not an employee; however, respondent cites Rev. Rul. 72-86, 1972-1 C.B. 273, for the proposition that a bank trustee is not an employee.

We are not bound by revenue rulings, and, applying the standard enunciated by the Supreme Court in Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), the weight (if any) that we afford them depends upon their persuasiveness and the consistency of the Commissioner's position over time. Taproot Admin. Servs., Inc. v. Commissioner, 133 T.C. 202, 208-209 (2009), aff'd, 679 F.3d 1109 (9th Cir. 2012).

The revenue ruling respondent cites addresses whether directors (not bank trustees) are in a trade or business under sec. 162. Moreover, respondent has failed to identify any case citing Rev. Rul. 72-86, supra, since its publication nearly 40 years ago. For the foregoing reasons, we do not find Rev. Rul. 72-86, supra, to be

(continued...)

**[*13]** 31.3121(d)-1(c), Employment Tax Regs., and apply our common law rules to determine whether Mr. Blodgett was an employee of the bank.

First, section 3121(d) and its accompanying regulations are very specific in defining statutory employees.[13]  While a director and a trustee are analogous in many ways, section 3121(d) and its accompanying regulations implicitly provide for an analysis of our common law rules in the multitude of circumstances where individuals do not fall within one of the statutory definitions of an employee.  See sec. 31.3121(d)-1(a)(2), Employment Tax Regs.

Second, if an employer-employee relationship exists, the parties' designation or description of the relationship as anything other than that of employer and employee is immaterial.  Jacobs v. Commissioner, T.C. Memo. 1993-570; sec. 31.3121(d)-1(a)(3), Employment Tax Regs.  Respondent has failed to cite a single case where a taxpayer's title as director determined his employment

---

[12](...continued)
persuasive in this case.

[13]For example, sec. 3121(d)(3)(A) defines an employee as "any individual * * * who performs services for remuneration for any person * * * as an agent-driver or commission-driver engaged in distributing meat products, vegetable products, bakery products, beverages (other than milk), or laundry or drycleaning services, for his principal".  Furthermore, sec. 31.3121(d)-1(d)(3)(ii), Employment Tax Regs., distinguishes a life insurance salesman from a general insurance salesman.  We are hesitant to find that a trustee is the same as a director when sec. 3121(d)(3)(A) seems to distinguish the milkman from the pizza delivery person.

**[*14]** classification.  In <u>Jacobs</u> the taxpayer was a director, officer, and shareholder of several corporations. While we recognized that a director, in his capacity as such, is not an employee under section 31.3121(d)-1(b), Employment Tax Regs., we went on to note that "whether a director of a corporation is also an employee depends primarily on whether the director performs services for the corporation that 'are not directorial in nature' and on whether those services are performed in an employee capacity."  In other words, we looked beyond the taxpayer's job title of director and considered the facts and circumstances of his position in concluding that his services were performed in his capacity as an employee.  In addition to our preceding analysis, we applied our common law rules and found that the taxpayer was an employee.

Finally, section 31.3121(d)-1(a)(2), Employment Tax Regs., explains that if an individual is an employee under the common law analysis, he is an employee whether or not he falls within one of the statutory employee categories.  For the foregoing reasons, we do not decide whether a trustee is the same as a director for purposes of section 31.3121(d)-1(b), Employment Tax Regs.  Rather, we apply our common law rules in making our determination.

[*15] I.  Common Law Employees

The Commissioner's determinations are presumptively correct, and taxpayers bear the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  This principle applies to the Commissioner's determination that a taxpayer is an employee.  See Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 268 (2001).  If an employer-employee relationship[14] exists, its characterization by the parties as some other

---

[14]Sec. 31.3121(d)-1(c)(2), Employment Tax Regs., defines an employer-employee relationship as follows:

   Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished.  That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done.  In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so.  The right to discharge is also an important factor indicating that the person possessing that right is an employer.  Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services.  In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. * * *

[*16] relationship is of no consequence. Sec. 31.3121(d)-1(a)(3), Employment Tax Regs.

For purposes of employment taxes, the term "employee" includes "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee". Sec. 3121(d)(2). Although the determination of employee status is to be made by common law concepts, a realistic interpretation of the term "employee" should be adopted, and doubtful questions should be resolved in favor of employment. Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 269.

This Court considers the following factors to decide whether a worker is a common law employee or an independent contractor: (1) the degree of control exercised by the principal; (2) which party invests in work facilities used by the individual; (3) the opportunity of the individual for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship of the parties believed they were creating.[15] Id. at 270; Weber v.

_____

[15]In addition to addressing these common law factors, petitioners discuss factors listed in Internal Revenue Service Publication 937, Employment Taxes, and Publication 15-A, Supplement to Publication 15 (Circular E), Employer's Tax Guide, in arguing that Mr. Blodgett should be classified as an employee of the bank.

(continued...)

**[*17]** <u>Commissioner</u>, 103 T.C. 378, 387 (1994), <u>aff'd</u>, 60 F.3d 1104 (4th Cir. 1995).

No one factor dictates the outcome; rather, we must look at all the facts and

circumstances of each case. <u>Weber v. Commissioner</u>, 103 T.C. at 387.[16]

A. <u>Degree of Control</u>

The "right to control" is the crucial test to determine the nature of a working

relationship. <u>Id.</u> The degree of control is of great importance, though not

exclusive. <u>Id.</u> An employer-employee relationship exists when the principal

retains the right to direct the manner in which the work is to be done, controls the

methods to be used in doing the work, and controls the details and means by which

the desired result is to be accomplished. <u>Ellison v. Commissioner</u>, 55 T.C. 142,

152-153 (1970). To retain the requisite control over the details of an individual's

---

[15](...continued)
Internal Revenue Service publications though "aimed at explaining existing tax law to taxpayers" do not have the force of law. <u>Taylor v. United States</u>, 57 Fed. Cl. 264, 266 (2003). "The authoritative sources of Federal tax law are the statutes, regulations, and judicial decisions; they do not include informal IRS publications." <u>Miller v. Commissioner</u>, 114 T.C. 184, 195 (2000). Furthermore, many of the considerations in Publications 937 and 15-A are embodied in our common law factor test. Accordingly, we do not specifically address petitioners' Publication 937 and 15-A arguments.

[16]Moreover, the Court of Appeals for the Second Circuit, to which this case would be appealable, considers many of the same or similar factors when classifying a worker as an employee or an independent contractor. <u>See</u> <u>Aymes v. Bonelli</u>, 980 F.2d 857, 861 (2d Cir. 1992); <u>see also</u> <u>Avis Rent-a-Car System v. United States</u>, 503 F.2d 423, 429 (2d Cir. 1974).

**[*18]** work, the principal need not stand over the individual and direct every move made by the individual; it is sufficient if the principal has the right to do so. <u>Weber v. Commissioner</u>, 103 T.C. at 388.

Petitioners argue that trustees are controlled by the corporators, the charter and bylaws, and Government regulators; however, our "right to control" test focuses on the <u>principal's</u> right to control the worker. The principal is the "person for whom services are performed". <u>See</u> sec. 31.3121(d)-1(c)(2), Employment Tax Regs. The bank hires trustees to perform various oversight services; therefore, the bank is the principal. While banking regulations may impose onerous restrictions on the banking industry, trustees do not perform services on behalf of bank regulators. Accordingly, we do not consider the restrictions imposed by bank regulators when conducting our "right to control" analysis.

The bank is owned by members of the community, who are represented by corporators. Corporators oversee the trustees, and the trustees "supervise" the bank's management. Corporators also establish the bank's bylaws and have the power to elect and remove trustees. Trustees operate independently from the bank's management. Accordingly, only the corporators could theoretically "control" the trustees; however, we believe the corporators' right to remove a trustee is significantly tempered for the following reasons: (1) all trustees are

[*19] corporators;  (2) any corporator not a trustee (because of reaching the mandatory retirement age) generally meets only once a year to review the bank's performance; (3) no corporator could unilaterally remove a trustee--trustees may be removed only by vote; and (4) there is no indication in the record that a trustee was ever removed by the corporators.  Accordingly, we do not believe the corporators had any meaningful control over the trustees.  Therefore, this factor strongly supports a finding that Mr. Blodgett was not an employee of the bank.

B.  Investment in Facilities

The fact that a worker provides his or her own tools generally indicates independent contractor status.  Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 271-272 (citing Breaux & Daigle, Inc. v. United States, 900 F.2d 49, 53 (5th Cir. 1990)).   In addition, maintenance of a home office is consistent with independent contractor status.  Rosato v. Commissioner, T.C. Memo. 2010-39; Lewis v. Commissioner, T.C. Memo. 1993-635.  If, on the other hand, the worker performs all work at an office furnished by the principal, he may be an employee.  Levine v. Commissioner, T.C. Memo. 2005-86.  The bank provides board members with private meeting rooms, banking publications, and office supplies.   Mr. Blodgett  did not have a home office or provide any of his own supplies.  This factor weighs in favor of classifying him as an employee.

**[*20]** C.  <u>Opportunity for Profit or Loss</u>

The opportunity for profit or loss indicates nonemployee status.  <u>Simpson v. Commissioner</u>, 64 T.C. 974, 988 (1975); <u>Rosato v. Commissioner</u>, T.C. Memo. 2010-39.  If a person performing a service undertakes a substantial cost, for example by employing and paying his own laborers, he may be an independent contractor.  <u>Unites States v. Silk</u>, 331 U.S. 704, 717-718 (1947).  Mr. Blodgett's compensation depended primarily on the number of meetings he attended--he had no opportunity for profit or loss.  This factor weighs in favor of classifying Mr. Blodgett as an employee.

D.  <u>Principal's Right To Discharge</u>

Employers typically have the right to terminate employees at will.  <u>Ellison v. Commissioner</u>, 55 T.C. at 155.  As discussed <u>supra</u>, while corporators could remove a trustee by vote, there were significant impediments to doing so.  We believe this factor supports a finding that Mr. Blodgett was not an employee of the bank.

E.  <u>Principal's Regular Business</u>

Performing work that is part of the principal's regular business is indicative of employee status.  <u>Simpson v. Commissioner</u>, 64 T.C. at 989; <u>Rosato v. Commissioner</u>, T.C. Memo. 2010-39.  The bank's regular business involved taking

**[\*21]** deposits and making loans and other investments. Trustees were not directly involved in the bank's day-to-day operations, but they were generally responsible for approving the strategic vision and policy matters. Petitioners argue that the trustees' "oversight" function furthered the regular business of the bank. Neither party cites any case regarding this factor. We do not believe the trustees' work is part of the bank's regular business. The bank's trustees perform an intermittent oversight function--they are not involved in the daily operations of taking deposits and making loans. This factor does not support a finding that Mr. Blodgett was an employee.

F. Permanency of Relationship

Permanency of a working relationship is indicative of an employer-employee relationship. Rosemann v. Commissioner, T.C. Memo. 2009-185. In contrast, a transitory work relationship may weigh in favor of independent contractor status. Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 273. Respondent argues that Mr. Blodgett has a transitory relationship with the bank because trustees were elected to three-year terms and corporators could remove trustees by vote. Petitioners believe a trustee's three-year appointment supports a finding of an employer-employee relationship because the bank's management, who are considered employees of the bank, are elected only to one-year terms.

**[\*22]** As discussed supra, there were significant impediments to removing a trustee. Furthermore, we are hesitant to find Mr. Blodgett's trustee position to be transitory, not only because Mr. Blodgett was reelected to his trustee position every 3 years for over 30 years, but also because the bank's management, who are employees, are appointed only to one-year terms. Accordingly, this factor weighs in favor of classifying Mr. Blodgett as an employee.

### G. Relationship the Parties Believed They Were Creating

Courts have considered the relationship the parties believed they were creating. Simpson v. Commissioner, 64 T.C. at 984-985. Mr. Blodgett attests that when he joined the bank in 1977 he was told by the bank president to treat his compensation as regular income.[17] Mr. Morelli, the current vice president and chief financial officer of the bank, testified that he had been employed by the bank for 20 years and that the trustees had been classified as independent contractors "as far as I can remember". He also testified that the bank consulted certified public accountants in determining that trustees were not employees of the bank.

Mr. Blodgett never received a Form W-2, Wage and Tax Statement, nor did he ever have Social Security tax withheld from his trustee compensation; rather, he

---

[17]While we do not question Mr. Blodgett's credibility, there is no evidence in the record supporting this assertion.

**[*23]** received a Form 1099-MISC reporting his trustee income as nonemployee compensation. We believe the foregoing indicates that the bank did not intend to create an employer-employee relationship. See, e.g., Eren v. Commissioner, T.C. Memo. 1995-555, aff'd, 180 F.3d 594 (4th Cir. 1999). Moreover, Mr. Blodgett knew or should have known that the bank did not consider him an employee. Accordingly, this factor does not weigh in favor of classifying Mr. Blodgett as an employee.

### H. Additional Consideration

Section 31.3121(d)-1(b), Employment Tax Regs., provides that a director is not an employee. Bank trustees and directors are both primarily responsible for setting, monitoring, and/or approving the company's general objectives and policies.[18] As discussed supra, while we do not decide whether a bank trustee is the same as a director under section 31.3121(d)-1(b), Employment Tax Regs., we believe the substantial similarities between the two in these circumstances support a finding that Mr. Blodgett was not an employee of the bank.

---

[18]The parties agree that the primary differences between the roles of trustees and directors are: (1) trustees act on behalf of the community while directors act on behalf of shareholders, and (2) trustees have less responsibility than directors. We do not believe either of these differences provides a meaningful distinction for purposes of our common law factor analysis.

**[\*24]** III.  <u>Conclusion</u>

While there are three factors weighing in favor of classifying Mr. Blodgett as an employee and four factors weighing in favor of classifying Mr. Blodgett as an independent contractor, the degree of control that the principal exercises over the worker is the crucial test in making the employer-employee determination.  <u>See</u> <u>Clackamas Gastroenterology Assocs., P.C. v. Wells</u>, 538 U.S. 440, 448 (2003); <u>Rosato v. Commissioner</u>, T.C. Memo. 2010-39.  Furthermore, the substantial similarities between Mr. Blodgett's role and the role of a director strongly favor a finding that Mr. Blodgett was not an employee of the bank.  Giving due consideration to the totality of the facts presented, we conclude that Mr. Blodgett was not an employee of the bank and is therefore liable for the deficiency in income tax for the 2008 tax year.

In reaching our holding herein, we have considered all arguments made by the parties, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.