**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-38

UNITED STATES TAX COURT

JUAN A. RAMIREZ AND REBECCA YBARRA-RAMIREZ, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9335-11S.                      Filed May 20, 2013.

Juan A. Ramirez and Rebecca Ybarra-Ramirez, pro sese.

Harry J. Negro, for respondent.

SUMMARY OPINION

JACOBS, Judge:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant

to section 7463(b), the decision to be entered is not reviewable by any other court,

and this opinion shall not be treated as precedent for any other case. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the issues for decision are: (1) whether $82,000 in fees Juan Ramirez received in 2007 from Univision Radio Broadcasting Texas, L.P. (Univision), for "off-air" appearances and promotional services performed on behalf of sponsors (referred to by the parties as talent and remote fees) were earned by him as an independent contractor or as an employee of Univision; and (2) whether expenses associated with the talent and remote fees paid to Mr. Ramirez are deductible as business expenses on Schedule C, Profit or Loss From Business, of petitioners' joint Form 1040, U.S. Individual Income Tax Return, or as

---

[1] In the notice of deficiency, respondent determined that petitioners were not entitled to $2,500 in charitable contribution deductions. Petitioners did not dispute this adjustment in their petition or at trial. We therefore deem that adjustment conceded. See Rule 34(b)(4).

Respondent made several errors in the notice of deficiency, the totality of which benefited petitioners. Respondent does not wish to increase petitioners' taxable income for 2007 to reflect the resulting benefit to petitioners as a consequence of these errors.

unreimbursed employee business expenses on Schedule A, Itemized Deductions, of Form 1040, to the extent that the amount of the expenses exceeds 2% of petitioners' adjusted gross income.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits. At all relevant times, petitioners resided in Texas. Rebecca Ybarra-Ramirez is a party to this case by virtue of her having signed the joint 2007 income tax return.

During 2007, Mr. Ramirez was employed by Univision as an "on-air personality" and program director for radio station KXTN in San Antonio, Texas. Pursuant to his employment agreement with Univision, Mr. Ramirez agreed to (1) host a five-hour-a-day, six-days-a-week radio program, (2) work as an announcer at the radio station; (3) attend staff meetings; (4) promote the station by meeting with persons in the entertainment, advertising, and related fields; and (5) make off-air appearances promoting KXTN. For these services, Mr. Ramirez received a base salary plus a bonus and Univision stock options.

Pursuant to his employment agreement, Mr. Ramirez agreed to render services subject to Univision's supervision, direction, and control. He further

agreed to conform to Univision's standards of professional conduct and to comply with Univision's instructions, directions, requests, and policies relating to "on-air" professionalism and artistic taste and judgment. Moreover, pursuant to the employment agreement, Univision had the unqualified right to change, edit, and otherwise alter the content, or the personnel involved, in the production of Mr. Ramirez's program.

In 2005, KXTN was struggling financially, and Univision was considering "shutting its [KXTN's] doors". As KXTN's program director, Mr. Ramirez took it upon himself to find additional radio sponsors. Initially, he joined the station's salespeople in meetings with potential advertisers, but he soon developed his own base of sponsors.

Mr. Ramirez established a direct, personal relationship with his sponsors, working hand-in-hand with them from the start of the advertising campaign to its end. They had no written contracts, just handshake agreements. Mr. Ramirez set the amount to be paid to him for his promotional services without input from Univision or KXTN. The amounts he received for these services varied from year to year depending on how hard he "hit the bricks", i.e., the amount of effort Mr. Ramirez exerted in working with his sponsors.

Mr. Ramirez assisted the sponsors in developing their respective advertising

campaigns, including the drafting of their "copy points" which outlined those elements of the advertising campaign that the sponsors desired to highlight. He promoted their products and/or services, both during on-air broadcasts and on "off-air" appearances at sites designated by the sponsors.

Mr. Ramirez's promotional work for his sponsors was not governed by his employment agreement with Univision. Neither Univision nor KXTN had direct input in the contents of the script. Indeed, Univision's and KXTN's only involvement was to ensure that (1) the script did not contain fraudulent material, and (2) Mr. Ramirez did not use language that would jeopardize the radio station's broadcasting license.

The fees Mr. Ramirez charged his sponsors for promotional services corresponded to his popularity and his show's ratings. Mr. Ramirez was careful to state his station's call letters and use his "radio name" of Jonny Ramirez whenever he promoted his sponsors' products/services. In reality, the sponsors were paying for Mr. Ramirez's "radio persona" as much as his promotional ideas.

The charges for Mr. Ramirez's promotional services were included as a line item in Univision's monthly invoice to the sponsors. The sponsors paid Univision for Mr. Ramirez's promotional services. Univision then included the talent and remote fees so collected for Mr. Ramirez's services in his paycheck. Hence,

Univision was used as a conduit for payment of Mr. Ramirez's promotional services to the sponsors.[2]  On each earnings statement Mr. Ramirez's compensation was bifurcated--his salary was categorized as "Regular", and payment for his promotional services was categorized as "Talent & Remote".  Univision withheld Federal income tax as well as payroll taxes (i.e., Social Security tax and Medicare tax) with respect to each of these two categories.

Univision timely issued a Form W-2, Wage and Tax Statement, to Mr. Ramirez for 2007.  Univision reported Mr. Ramirez's total compensation (i.e., both his "regular" pay reflecting his wages and the payment for the talent and remote fees) in Box 1, Wages, tips, other comp, even though fees for Mr. Ramirez's promotional services were outside the scope of his employment agreement.  In explaining this apparent discrepancy, Univision Radio/San Antonio's general manager, Dan Wilson, stated in a letter attached to petitioners' 2007 income tax return:  "Included in Juan Ramirez W-2 income are amounts paid

---

[2]In previous years, sponsors paid promotional fees directly to radio personalities.  Some radio personalities failed to report these payments on their income tax returns, and the Internal Revenue Service in some instances challenged deductions claimed by the sponsors for fees paid to the radio personalities.  Thus, inclusion of Mr. Ramirez's fee in Univision's invoice, and payment for Mr. Ramirez's services to Univision, was to a large extent for tax reasons.

to Juan Ramirez through the radio station for talent services provided to clients and advertisers."

Petitioners timely filed their 2007 Federal income tax return. The return reported all of Mr. Ramirez's income, including the talent and remote fees, as wages on line 7 of Form 1040. The return also included a Schedule C on which petitioners claimed deductions for $26,303 in expenses related to Mr. Ramirez's promotional work for his sponsors; the Schedule C did not report his $82,000 in talent and remote fees. The Schedule C included a statement written in Part V, Other Expenses, which stated: "Note: W-2 gross includes freelance talent income of $82,000. See letter from emplyer [sic] attached" and included a copy of Mr. Wilson's letter. Petitioners' accountant, Kenneth Davis, a certified public accountant, whose client base included other radio personalities, testified as to why he prepared petitioners' tax return in this manner:

> [T]he only other way I could have done it would be to show a schedule
> and then back out from the wages a -- the 82000 and put it on Schedule
> C with a note that this represents freelance talent fees included in the
> W-2. At that point, it would create a problem because I'd get a CP2000
> notice that information on the tax return did not agree with what was
> reported by the payers.

Believing that reporting petitioners' income in this way could lead to problems with the Internal Revenue Service, Mr. Davis requested Univision to report the talent and

remote fees on Form-1099-MISC, Miscellaneous Income, instead of on Form W-2, but Univision refused to do so because, according to Mr. Davis, "that's the way the IRS wants it."

## Discussion

The Commissioner's determinations are presumed correct, and taxpayers bear the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners assert that although Mr. Ramirez was an employee of Univision with respect to his radio personality duties as described in his employment agreement, he was an independent contractor with respect to the promotional services he provided to his sponsors; consequently, the business expenses related to those services were deductible on Schedule C. On the other hand, respondent asserts that Mr. Ramirez was a common law employee of Univision with respect to all of his earnings; consequently, the talent and remote fees are employee wages and the expenses associated with those earnings are not deductible on Schedule C. Respondent does not contest the accuracy as to the amounts reported by petitioners for Mr. Ramirez's work expenses but maintains that those expenses are deductible as

miscellaneous itemized deductions on Schedule A, to the extent that the expenses exceed 2% of petitioners' adjusted gross income. See secs. 62(a)(2), 67.

Whether an individual is an employee or an independent contractor is a factual question to which common law principles apply. Sec. 3121(d)(2); Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992); Weber v. Commissioner, 103 T.C. 378, 386 (1994), aff'd, 60 F.3d 1104 (4th Cir. 1995). Factors relevant in determining the existence of an employment relationship include: (1) the degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used by the worker; (3) the opportunity of the worker for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is an integral part of the principal's regular business; (6) the permanency of the relationship; (7) the relationship the parties believe they were creating; and (8) the provision of employee benefits. NLRB v. United Ins. Co., 390 U.S. 254, 258-260 (1968); Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 270 (2001); Weber v. Commissioner, 103 T.C. at 387; see also sec. 31.3121(d)-1(c)(2), Employment Tax Regs. (setting forth criteria for identifying employees under common law rules). All of the facts and circumstances are considered, and no one factor dictates the outcome. Ewens & Miller. Inc. v. Commissioner, 117 T.C. at 270.

Petitioners and respondent agree that Mr. Ramirez is an employee of Univision for purposes of his radio program and the ancillary duties he performed

pursuant to the terms of his employment agreement. But the fact that an individual is an employee in one capacity does not foreclose the possibility that the individual may independently contract with the employer in another capacity. Reece v. Commissioner, T.C. Memo. 1992-335.

The services Mr. Ramirez rendered in promoting the products and/or services of his sponsors are not among the duties envisaged in the employment agreement. We therefore must determine whether in promoting his sponsors' products/services, Mr. Ramirez was acting as an employee of Univision.

I.     Degree of Control

Although not the exclusive inquiry, the degree of control exercised by the principal over the worker is the crucial test in determining the nature of a working relationship. See Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 448 (2003); Leavell v. Commissioner, 104 T.C. 140, 149-150 (1995). In an employer-employee relationship the principal must have the right to control not only the result of the employee's work but also the means and method used to accomplish that result. Packard v. Commissioner, 63 T.C. 621, 629 (1975); Potter v. Commissioner, T.C. Memo. 1994-356. To have the requisite control, the principal need only possess the right to control the details of the person's work; the principal need not actually exercise that control. Thomas Kiddie, M.D., Inc. v.

<u>Commissioner</u>, 69 T.C. 1055, 1058 (1978). Moreover, if the nature of the job mandates a more independent approach, such as professional services, a lesser degree of control exercised by the principal may still lead to a finding of an employer-employee relationship. <u>See</u> <u>Bilenas v. Commissioner</u>, T.C. Memo. 1983-661.

The record does not demonstrate that Univision possessed the requisite degree of control to establish that Mr. Ramirez was acting in his capacity as an employee with respect to promoting his sponsors' products/services. <u>Reece v. Commissioner</u>, T.C. Memo. 1992-335, and <u>Robinson v. Commissioner</u>, T.C. Memo. 2011-99, <u>aff'd</u>, 487 Fed. Appx. 751 (3d Cir. 2012), provide useful guidance in deciding this matter. In <u>Reece</u>, the taxpayer was employed by a university as a full-time professor; but in addition to his professorial duties, he provided corporate seminar services to multiple clients in his spare time. Some of the seminars he designed and led were taught through the university's executive education program in classrooms provided by the university. These seminars were short and not offered for college credit. The taxpayer wrote his own course materials and syllabi, even though those materials were published by the school and were not permitted to be sold separately. We held that the taxpayer's position as a professor was undoubtedly that of an employee, despite the degree of independence inherent in

that position.  But we further held that for purposes of his seminars, the taxpayer was an independent contractor.

In Robinson, the taxpayer was a vocational instructor at Temple University. His courses were not part of the university's regular curriculum; they were part of a program offered to nonstudents.  Temple University provided the taxpayer with classroom space and governed his class enrollment; the taxpayer bore no risk of loss and had no possibility of earning a profit other than his agreed compensation. Although Temple University controlled the curricula and set the deadline for the taxpayer's finished product, the taxpayer wrote and updated his course materials without oversight by the school.  Laying heavy emphasis on the fact that the taxpayer prepared his own course materials, we held that Temple University did not exercise sufficient control over the taxpayer to treat him as an employee.

Like college professors, radio personalities such as Mr. Ramirez are provided with substantial independence, and Mr. Ramirez was given wide latitude in programming his show.  He also, as part of his duties under his employment agreement, broadcasted commercials for the radio station.  But like the taxpayer in Reece, Mr. Ramirez acted outside the scope of his employment with Univision with respect to his promotional services.

In <u>Reece</u>, the university did not require the taxpayer to conduct seminars, although it did support him in that it paid him to conduct the seminars on campus and provided the facilities. Similarly, Univision did not require Mr. Ramirez to find sponsors as part of his duties as a radio personality under his employment agreement. Rather, he took this duty upon himself when the radio station faced possible closure. Mr. Ramirez developed his relationships with the sponsors; helped create the marketing campaign, copy points, and scripts; and set his own fees for promotional services without supervision or input from Univision.

Admittedly, Univision exercised some control over Mr. Ramirez to ensure that the scripts he read during his radio show did not violate governmental requirements (i.e., rules against fraud and broadcast decency standards); and the radio station had the right to reject broadcasting on-air commercials from Mr. Ramirez's sponsors. But the radio station retained approval control over all broadcasted commercials, including those that were pre-recorded. In both <u>Reece</u> and <u>Robinson</u>, the universities' right of final approval over all course materials did not, in and of itself, establish an employer-employee relationship.

We are mindful that Mr. Ramirez's promotional value to his sponsors was inextricably linked to his broadcast ratings. He was valuable to them only as long as he was a popular radio personality; and to maintain that status, Mr. Ramirez had to

act in a manner which met with the approval of Univision and KXTN. But comporting oneself in a manner that does not cause the termination of one's employment does not, by itself, rise to the requisite level of control contemplated by the law.

This factor weighs in favor of classifying Mr. Ramirez as an independent contractor.

## II.    Provision of Facilities Used

Univision provided the facilities from which Mr. Ramirez broadcasted his program and his sponsors' commercials. However, Mr. Ramirez worked with his sponsors and made paid off-air appearances at their facilities or sites designated by them.

We judge this factor to be neutral.

## III.    Opportunity for Profit or Loss

The opportunity for profit or loss indicates one's independent contractor status. Blodgett v. Commissioner, T.C. Memo. 2012-298. Mr Ramirez offered his services to advertisers desiring him to be a spokesperson for their products or services. Mr. Ramirez's promotional fees were paid by those advertisers, and, as he testified, his income depended on how hard he "hit the bricks". Moreover, the amount Mr. Ramirez earned was dependent on the satisfaction of his sponsors. Mr.

Wilson's letter makes clear that Univision was merely a conduit through which Mr. Ramirez was paid for his appearances and promotional services.

This factor weighs in favor of classifying Mr. Ramirez as an independent contractor.

IV.     Right To Discharge the Worker

Because Mr. Ramirez was an employee of Univision, it had the right to discharge him.  However, with respect to the promotional sponsors, only his sponsors had the right to terminate their promotional relationship.

This factor weighs in favor of classifying Mr. Ramirez as an independent contractor.

V.     Integral Part of the Business

Selling and broadcasting advertising is the manner by which a radio station earns a profit; it is an integral part (i.e., the so-called mother's milk) of the station's business.  But Mr. Ramirez was not employed by Univision to sell on-air advertising; rather, he was employed to create on-air content (i.e., his radio program).  Univision hired him to be a radio personality, not a salesperson.  Other individuals were employed to create and sell commercials.

Although it is true that Mr. Ramirez was required to broadcast commercials, payment for that aspect of his services to Univision and KXTN was included in his

"regular pay" as an employee. Mr. Ramirez's promotional services to his sponsors (as their spokesperson) was separate from the services he rendered to Univision and KXTN.

This factor weighs in favor of classifying Mr. Ramirez as an independent contractor.

VI.     Permanency of the Relationship

It is undisputed that during 2007 Mr. Ramirez was an employee of Univision and KXTN and as such he had a permanent relationship with them. However, Univision did not require Mr. Ramirez to pursue sponsors, and his compensation under his employment agreement was not affected by his success in performing promotional work for his sponsors.

With respect to Mr. Ramirez's relationship with his sponsors, the number of sponsors varied from year to year and was based on the time and effort Mr. Ramirez expended.

This factor weighs in favor of classifying Mr. Ramirez as an independent contractor.

VII.    The Relationship the Parties Believed They Created

We are satisfied that Mr. Ramirez, Univision, and the sponsors each believed the relationship created was that between Mr. Ramirez and his sponsors. Mr.

Wilson's letter makes clear that Mr. Ramirez was providing services to "clients and advertisers", i.e., his sponsors, and that Univision was simply acting as a conduit with respect to the remuneration by the sponsors to Mr. Ramirez. This factor weighs in favor of classifying Mr. Ramirez as an independent contractor.

VIII.  The Provision of Employee Benefits

Univision provided Mr. Ramirez with numerous employee benefits. These benefits were provided under the terms of the employment agreement and accrued to Mr. Ramirez without regard to the number of his sponsors. The sponsors paid Mr. Ramirez a fee for his services, not employee benefits.

This factor weighs in favor of classifying Mr. Ramirez as an independent contractor.

IX.  Conclusion

All of the aforementioned factors either favor classifying Mr. Ramirez as an independent contractor or are neutral. Giving due consideration to the totality of the facts presented, we hold that the talent and remote fees paid to Mr. Ramirez for his appearance and promotional services were earned by him as an independent

contractor.  Consequently, the $82,000 talent and remote fee that petitioners listed as wages on their 2007 income tax return should be reclassified as Schedule C gross receipts.

Respondent does not dispute the deductibility of, or the amounts of, the various business expenses reported on Schedule C.  After reclassifying the talent and remote fees of $82,000 as Schedule C gross receipts and giving consideration to the $26,303 in business expenses, we find that petitioners' Schedule C net business profits for 2007 properly totaled $55,697.

Because of petitioners' concession, see supra note 1, a computation under Rule 155 is required.  To reflect the foregoing,

Decision will be entered under

Rule 155.